U. S. LIFE INS. CO. et al. v. HAMILTON.

No. 2946.

Court of Civil Appeals of Texas. Waco.

March 8, 1951.

Rehearing Denied April 5, 1951.

they again offered in their pleadings to pay him that amount. For further answer, subject to such admission and tender, they pleaded a general denial.

The case was tried before a jury. Upon the conclusion of the evidence the court submitted two special issues to the jury over numerous objections of appellants. In response to the issues, the jury found: (1) that the unauthorized use of appellee's signature and name by appellants resulted in damages to appellee; and (2) that $500.00 was the amount of money which would reasonably compensate appellee for such damages. Appellants duly presented their motion for judgment non obstante veredicto, moving the court for reasons therein set forth, to disregard the answers of the jury to each of the issues submitted and to render judgment against them for the sum of $170.51, which they had tendered to appellee. The court overruled the motion and rendered judgment against appellants for the sum of $770.51, being $170.51 for salary and commissions, $100.00 for an attorney's fee, and $500.00 for damages.

Under appropriate points in their brief, appellants say the trial court erred in overruling their motion for judgment non obstante veredicto and in rendering judgment against them for an attorney's fee and damages. They contend here, as they did by their motion in the court below, that the sum of $170.51 was and is the full extent of their legal liability to appellee; that no attorney's fee is recoverable herein under the pleadings or evidence because appellee did not plead or prove that he had ever presented any claim for salary and commissions; and that appellee is not entitled to any recovery of damages under the pleadings or evidence because (1) the courts of Texas do not recognize damages for the invasion of privacy and (2) there is no evidence of any recoverable element of damages resulting from the wrongful conduct, if any, of which appellee complains.

The evidence and admissions of the parties showed that appellee entered into the service of appellants as their Branch Manager at Hillsboro under a written contract of employment dated September 30, 1948, and continued as such until January 21,

Scott, Wilson & Cureton, Waco, for appellants.

Crawford C. Martin, Hillsboro, for appellee.

HALE, Justice.

Appellee sued appellants for the recovery of an indefinite sum alleged to be due him as salary and commissions under a contract of employment, for an attorney's fee incurred in the prosecution of such claim, and for compensatory damages on account of the unauthorized use of his signature and name by appellants in the promotion of their business. Appellants answered with an admission that they owed appellee $170.51 as salary and commissions, alleging that they had tendered that sum to him, and

1950, when the contract was legally terminated by appellants. Under the terms of the contract appellee was to receive a salary of $200.00 per month and certain commissions on all premiums collected by him for policies of the "Doctor's Plan" (that being the trade name of appellants) sold and delivered by him during the time the contract was in force. The amount of unpaid salary and commissions earned by appellee under the contract was $170.51.

 Art. 2226 of Vernon's Ann.Tex. Civ.Stats. as amended by the 51st Legislature in 1949, authorizes a recovery of attorney's fees in actions for personal services rendered if any person, having a valid claim for such services, shall present the same and if, at the expiration of thirty days thereafter, the claim has not been paid or satisfied. Since this article is penal in nature, like other similar statutory provisions authorizing the recovery of attorney's fees in derogation of the common law, it should be strictly construed and applied. Washington Fid. Nat. Ins. Co. v. Williams, Tex. Com.App., 49 S.W.2d 1093, pt. 3 and authorities. We find no evidence in this case showing or tending to show that appellee presented any kind of claim whatsoever to appellants prior to the institution of this suit on March 15, 1950. On the contrary, we think the record affirmatively discloses that appellants have been ready and willing at all times to pay appellee the amount of salary and commissions due him. Appellee testified that appellants' agent told him they were "ready to settle, and I said, 'You had better see my lawyer'", and that his lawyer then filed this suit. Consequently, we are of the opinion that appellee was not entitled to recover any attorney's fee in this cause. National Life Ins. Co. v. Mouton, 113 Tex. 224, 252 S.W. 1040; Metropolitan Life Ins. Co. v. Wann, 130 Tex. 400, 109 S. W.2d 470, 115 A.L.R. 1301; Texas & N. O. R. Co. v. Houston, Tex.Civ.App. 38 S.W. 2d 882, pt. 1 and authorities.

We shall next consider whether appellee showed himself entitled to recover any damages, and if so, the amount thereof. We have experienced considerable difficulty in attempting to classify the nature of ap-

pellee's action for damages. In their brief, appellants say: "This is a suit for damages, the exact nature of which defies description, but which, for want of a better category, we will call one for unauthorized use of appellee's name by appellants." In his brief, appellee says: "This suit is for damages for the unauthorized use of appellee's name by appellants to boost their business."

The evidence and admissions of the parties showed that on or about February 6, 1950, appellants caused a form letter bearing a facsimile of appellee's signature to be mailed from their home office in Waco to approximately 200 persons residing in Hillsboro and its surrounding territory. Each letter read in its entirety as follows:

"Dear Friend:

The enclosed literature will give you a fair conception of the value of the services offered under the Doctor's Plan of hospitalization, medical care and surgery.

Ask your doctor * * * your hospital * * * and your friends about the Doctor's Plan. Do you recognize any of the physicians listed on our letterhead? Ask any of these members of the medical profession why they recommend the Doctor's Plan.

You owe it to yourself and your family to learn more about the Doctor's Plan and the Visiting Nurse Service which is furnished without charge to all policyholders wherever it is available. Our past performance assures you of our sincerity and dependability.

Please fill out the enclosed card and mail it to us postage-free and one of our trained consultants will supply you with extra details about this unique service without obligation to you.

Yours very truly,
The Doctor's Plan
E. B. Hamilton,
Manager."

Each of these letters was written or multigraphed on the stationery of appellants. Enclosed with each was a printed circular, advertising the hospitalization plan of appellants, and a business reply card addressed to Doctor's Plan, 106 Church Street, Hills-

boro, Texas, that being the local address of appellants' branch office at Hillsboro. During all the time appellee was employed as branch manager for appellants in Hillsboro, similar letters and advertising matter had been mailed out over the lithographed signature of appellee, with his knowledge and consent, for the purpose of promoting the mutual interest of the parties and appellee had furnished his signature to appellants for that purpose. But appellants, at the request of appellee, made a judicial admission that they were not authorized by appellee to use his name or a facsimile of his signature after the termination of his contract of employment.

■ The right of privacy as an independent and distinctive legal concept stems from the publication in 1890 of a law review article written by Warren and Brandeis (later Justice Brandeis). 4 Harvard L. Rev. 193. Its development affords a striking illustration of the healthy manner in which the great body of American law grows in meeting the demands of new conditions as they arise in the expanding social order. While we know of no case in which any court has directly passed upon the question as to whether or not an action for damages on account of injury resulting from a wrongful invasion of the right of privacy is cognizable in the courts of Texas, we are inclined to the view that the courts of this State should and would, under appropriate circumstances, recognize damages as a proper remedy for the wrongful invasion of such right. However, we do not think it is necessary for us to decide that precise question in this case, because we are of the opinion that this action for damages is not based upon or restricted to an invasion of appellee's privacy, as that legal concept has been developed through legislative enactments and judicial decisions in other jurisdictions. See: 33 Tex. Jur. p. 785; 41 Amer.Jur., pp. 923–951; 54 Cor.Jur. pp. 816–823; 132 A.L.R. pp. 22–110; 168 A.L.R. pp. 448–467; O'Brien v. Pabst Sales Co., 5 Cir., 124 F.2d 167.

■■ There was no pleading or admission that appellee's privacy or his desire or right to be let alone, if any such desire or right he had, was violated in this cause. The gravamen of the misconduct of which appellee complained, as shown by his pleadings and evidence and the statements in the briefs of the respective parties, was the act of appellants in continuing to use his name and signature for the promotion of their business after their pre-existing right and authority to do so had ended. The use of an individual's signature for business purposes unquestionably constitutes the exercise of a valuable right of property in the broadest sense of that term. It thus appears to us that appellee's complaint was based upon an infringement against his right of property in and to the exclusive use of his signature after his contract of employment with appellants had been terminated, irrespective of the question of privacy as an independent ground of recovery. See: 42 Am.Jur. pp. 187–191; 50 Cor.Jur., pp. 729–741. In this broad sense, we have no doubt that the unauthorized use of appellee's name and signature by appellants, regardless of why it was so used, constituted such wrongful conduct on their part as to entitle appellee to the recovery of nominal damages, even though no actual damages were shown. 13 Tex.Jur. pp. 69 et seq., §§ 4–6, and authorities.

In the case of Reaugh v. McCollum Exploration Co., 139 Tex. 485, 163 S.W.2d 620, 621, the Supreme Court of Texas said: "The fundamental purpose underlying all rules of damages, other than punitive damages, is to indemnify the injured party for the pecuniary loss suffered by him, placing him as nearly as possible in the position that he would have occupied but for the injury in question. Sabine & E. T. R. Co. v. Joachimi, 58 Tex. 456; Burr's Ferry, B. & C. R. Co. v. Allen, Tex.Civ.App., 149 S.W. 358; Davis v. Standard Rice Co., Tex.Civ.App., 293 S.W. 593, writ dismissed; 13 Tex.Jur. 73; 17 C.J. 728; 25 C.J.S., Damages, § 17."

■ In the case before us we find no evidence which, in our opinion, shows or tends to show that appellee suffered any pecuniary loss as a result of the act of appellants in sending out the form letters of which complaint is made. The letters were

entirely innocuous in content and there was no showing that appellants intended thereby to inflict any injury upon appellee. Although there was no direct evidence in explanation of why the letters were sent out under appellee's signature, we think the circumstances in evidence show that in all reasonable probability they were sent by some agent of appellants in their home office who either did not know that appellee had been discharged from the further service of appellants or through inadvertence had overlooked that fact. But, be that as it may, there was no evidence that any of the business reply cards enclosed with the letters were filled out and returned to appellants' branch office in Hillsboro, or that appellants actually received any pecuniary benefit therefrom in the promotion of their business. We think reasonable minds cannot differ in concluding from the evidence as a whole that each of the parties occupied substantially the same position after the letters were sent out that they would have occupied had such letters not been sent. It appears to us that appellee's pecuniary loss, if any, resulted solely from the loss of his job, and not from the sending of the letters of which complaint is made. Although he might have sustained substantial damages as the result of losing his job, such loss must be regarded in this case as *damnum absque injuria* because the contract of employment was legally terminated in accordance with its terms, even though its termination might have aroused considerable resentment on the part of appellee towards appellants.

In submitting the damage issues to the jury the trial court instructed the jurors that they might take into consideration the occupation, age and standing of appellee and the surrounding circumstances in evidence, including any loss of business profits, physical and mental suffering, and any loss of reputation or standing among the people who knew him, but "you will not in any event allow plaintiff any sum for anger or feeling or resentment towards defendants." Appellants duly presented many objections to the foregoing instruction, including the objection that there was no competent evidence raising the general issue of actual damages or any of the recoverable elements as submitted, and they contend here that the court below erred in overruling such objections.

Appellee was permitted, over the objections of appellants, to prove in substance that he enjoyed a good reputation as an insurance agent in Hillsboro and stood well there among the people who knew him. He also testified, generally, to the amount of his income and the profits which he had derived from his business activities as an insurance agent at different times. He further testified in effect that he had been worried, embarrassed and humiliated as a result of the conduct of appellants. But there was no evidence that the sending of the form letters caused him to sustain any loss of business profits, or any physical suffering, or any loss of reputation or standing among the people who knew him, and we fail to see how the sending of such letters, under the circumstances in evidence, could have had any such effect. Although there was evidence of emotional disturbance, since there was no physical injury or pain, or any element of consequential damages of a substantial nature shown, we do not think appellee was entitled to recover more than nominal damages in this cause. 13 Tex.Jur. p. 231, § 126; State Nat. Bank v. Rogers, Tex.Civ.App., 89 S. W.2d 825; Meadows v. First Nat. Bank of Harlingen, Tex.Civ.App., 149 S.W.2d 591; O'Brien v. Pabst Sales Co., 5 Cir., 124 F. 2d 167.

From what has been said, it follows that in our opinion the trial court erred in rendering judgment against appellants for any attorney's fee and for any damages in excess of $1.00. It appears that the evidence has been fully developed from the standpoint of appellee and that no useful purpose would be served by remanding the case to the court below for another trial or by passing upon any of the other points upon which the appeal is predicated. Therefore, we conclude that the judgment appealed from should be reversed and judgment should be here rendered in favor of appellee and against appellants for the sum

of $171.51, being $170.51 for salary and commissions and $1.00 for nominal damages, together with interest thereon at the rate of 6% per annum from June 23, 1950 until paid and the costs of suit in the trial court, the costs of this appeal to be taxed against appellee; and it is so ordered.

Reversed and rendered.