FIDELITY UNION LIFE INSURANCE COMPANY, Appellant,

v.

Leslie HUFF, Appellee.

No. 3459.

Court of Civil Appeals of Texas.

Waco.

July 25, 1957.

Rehearing Denied Sept. 12, 1957.

H. B. Houston, Dallas, for appellant.

Thompson, Knight, Wright & Simmons, Dallas, Bryan, Maxwell, Bryan & Wilson, Waco, for appellee.

TIREY, Justice.

Appellee brought this action against appellant for accrued renewal commissions due him as an agent of appellant and for accrued overwriting renewal commissions due him for his services as a branch manager of the company. A declaratory judgment was also sought for both renewal commissions and renewal overwriting commissions to accrue in the future. All accrued sums were stipulated, and the only issues presented arise out of the construction of the contract of the parties and the recovery of attorney's fees. The cause was tried without a jury and the court sustained the contentions of appellee as to the contract and also awarded appellee the sum of $2,000 as attorney's fees. The appellant seasonably perfected its appeal to the Dallas Court of Civil Appeals and the cause is here on transfer order of our Supreme Court. There was no request for findings of fact and conclusions of law and none filed.

The decree awarded appellee the following:

"1. $604.90, representing renewal commissions on plaintiff's personal production as agent which have accrued through April 1956, against which renewal commissions there has been applied a collection fee of 2 per cent of premium.

"2. $3,576.25 representing renewal overwriting commissions which have accrued through April 1956, under Plaintiff's Manager's Contract on his agency's production prior to April 15, 1950, against which renewal overwriting commissions there has not been applied a collection fee of 2 per cent of premium, the court finding that the said collection fee is not applicable to said renewal overwriting commissions.

"3. $5,061.35 representing renewal overwriting commissions which have accrued through April 1956, under plaintiff's manager's contract on his agency's production for the period April 15, 1950 to March 24, 1951, against which renewal overwriting commissions there has not been applied

a collection fee of 2 per cent of a premium, the court finding that the said collection fee is not applicable to said renewal overwriting commissions.

"4. $2000.00 attorneys' fee. (The amount of the award is not assailed).

"The aggregate of the above items and the total of plaintiff's judgment herein against defendant is $11,242.50.

"It is further adjudicated that plaintiff is entitled to receive from defendant renewal commissions as the same have and may accrue subsequent to April 30, 1956, on plaintiff's personal production as agent, upon all of his personal production produced up to and including April 15, 1950, against which renewal commissions there shall be applied a collection fee of 2 per cent of premium; that plaintiff under his Manager's Contract is entitled to renewal overwriting commissions of 2½ per cent of all renewal premiums on business produced by his agency to March 24, 1951. As the case may be, plaintiff shall be entitled to a total of nine renewal commissions and nine renewal overwriting commissions."

■ The decree is assailed on four points. They are substantially to the effect that the court erred (1) in holding that a provision of the contract, denying appellee any right to renewal commissions on business written during any uncompleted contract year, applied only to appellee's personal production and not to the production of the general agency under his supervision; (2) in holding that a provision of the contract for a charge of 2% of the premiums against renewal commissions accruing after the agent's leaving the service of the company applied only to appellee's personal production and not to the production of the general agency under his supervision; (3) in allowing attorney's fees in addition to the damages, because (a) the suit was not of the character contemplated by the statute authorizing recovery of attorney's fees; (b) there was no pleading or proof of the requisite demand, and (c) the cause of action for attorney's fees was barred by limitation.

A statement is necessary. On April 15, 1937, appellant and appellee entered into a written contract, denominated an "Agent's Contract," providing, among other things, for certain renewal commissions to be paid appellee. We quote the parts of the contract we deem pertinent to the points before us:

"9. The number of renewal commissions, if any, to which the agent shall be entitled shall be determined at the end of each calendar year and shall be based upon the amount of new insurance secured and paid for by the agent in the preceding twelve months as shown by the agent's ledger account kept by the Company at its Home Office, in accordance with the following schedule:

"50,000 but less than $100,000 new insurance in any year, renewal commissions thereon for the second to the sixth policy years inclusive.

"100,000 or more new insurance in any contract year, renewal commissions thereon for the second to the tenth policy years inclusive.

"(a) The said Agent shall not be entitled to receive renewal commissions on the premiums on new insurance secured and paid for by him during any such above referred to one year period in case such new insurance shall amount to less than $50,000. It is further understood and agreed that in order to qualify for non-forfeitable renewals the Agent must write and pay for $50,000 or more of new insurance in each year for three consecutive years following the date of this contract. * * *

"(e) It is further agreed that no renewal commissions shall be payable on the business produced during any contract year not fully completed by

the Agent while in the service of the Company, any volume of insurance written during such year and paid for in cash notwithstanding. * * *

"12. In the event of the termination of this contract within three years from the date it takes effect, no renewal commissions shall be payable after such termination. If the Agent complies with all the terms and conditions of this contract, and continues in the exclusive service of the Company for a period of not less than three years from the date this contract takes effect, then renewal commissions shall be payable as provided in Paragraph 9, subject to the provisions of this contract. In the event of the termination of this contract under conditions that provide for the payment of renewal commissions, such renewal commissions shall be subject to a collection fee of 2 per cent of the renewal premiums, and provided further that such renewal commissions shall continue only so long as the insurance in force written under this contract and on which renewal premiums are being received by the Company equals or exceeds $100,000."

Also, on April 15, 1937, and contemporaneously with his agency contract, appellant wrote appellee to confirm their verbal agreement that appellee was to become a branch manager. We quote this letter:

"This letter is written to confirm our verbal agreement that you are to become Branch Manager of our Temple office, effective April 15, 1937. For your services as Branch Manager the Company agrees to pay you a salary of $100.00 per month.

"It is understood and agreed that when your agency is paying for $750,-000 of business per year your salary will be increased to $150.00 per month; that when your agency is paying for $1,000,000 of business per year your salary will be increased to $200.00 per month; and that when your territory is paying for $1,200,000 per year your salary will be increased to $250.00 per month.

"It is further agreed that you are to receive 2½ per cent renewal overwriting commission on all renewal premiums on business written by and through your agency, upon plans upon which the Company regularly pays renewal commissions.

"It is further understood and agreed that while the $100.00 salary is being paid, if your agency pays for more than $500,000 of new business within any one calendar year the Company will pay $1.50 per thousand bonus on the amount paid for in excess of $500,-000. Likewise when the $150.00 per month salary is being paid this $1.50 per thousand bonus will apply to all paid-for business per year in excess of $750,000. When the $200.00 per month salary is being paid this $1.50 per thousand bonus will apply on all paid-for business per year in excess of $1,000,000, and when the $250.00 salary is being paid the $1.50 per thousand bonus will apply on all paid-for business in excess of $1,200,000 per year.

"Conforming to the terms of. the principal contract to which this supplemental agreement is attached, it is fully agreed that in computing volume Term and Modified Life will count half.

"You may attach this letter to your regular contract to become a part of it and subject to its terms and provisions."

Appellee went to work for appellant under the foregoing written contracts immediately and continued to work until March 24, 1951, at which time he tendered his resignation. As we understand the record, appellee's resignation took effect

on March 24, 1951, and therefore he failed by three weeks to complete the contract year begun April 15, 1950 and ending April 15, 1951, as provided for in paragraph 9(e) of the agent's contract. It is appellant's contention that the uncompleted contract year clause of the agent's contract applied to the renewal overwriting commissions agreed to be paid by letter dated April 15, 1937, appointing appellee branch manager, as well as renewal commissions provided for in the agent's contract, and that appellee was therefore not entitled to any renewal overwriting commissions on any business produced by his branch manager's agency after April 15, 1950. We are of the opinion that this view is sound and that the contracts under consideration are subject to no other interpretation. It is true that the services contemplated by the two contracts were different in some respects, and likewise the remuneration. For example, appellee was to receive for the business personally produced a certain scale of commissions and, in addition thereto, renewal commissions at the rate of five per cent on the personal business. For the managerial services he was to receive a salary and production bonus and, in addition thereto, renewal commissions at the rate of 2½ per cent on the entire production of the agency, including his own. The contract provides that as a part of appellee's remuneration for his services in both capacities he was to receive certain percentages of the renewal premiums. The differences in the services rendered in the two capacities in which appellee was employed and the other remuneration for his services are of no significance. Appellee and appellant had the right to contract as they did, that his managerial contract was to be subject to the terms and conditions of his agency contract. This they did and we have no authority to rewrite it. We are of the further view that the fact that the agent's contract referred to the commissions as renewals and the branch manager's contract referred to them as overwriting renewals amounts to a distinction without a difference since the managerial contract was subject to all of the terms and conditions of appellee's agency contract. See Government Personnel Mutual Life Ins. Co. v. Wear, Tex.Civ.App., 247 S.W.2d 284, same case affirmed on material point here before us, reversed and rendered on attorney's fees by 151 Tex. 454, 251 S.W.2d 525; Volunteer State Life Ins. Co. v. Snipes, Tex. Civ.App., 209 S.W.2d 935 (no writ history). We think we should add that we are of the further view that there is no ambiguity in the two contracts when construed together and by reason thereof limitations on the terms of the contract cannot be imposed.

Going back to the provisions of the agent's contract, section (e) of Paragraph 9 specifically provides: "It is further agreed that no renewal commissions shall be payable on the business produced during any contract year not fully completed by the agent while in the service of the Company, any volume of insurance written during such year and paid for in cash notwithstanding." That provision seems to us absolutely clear. Now bearing in mind the letter appointing appellee branch manager, which specifically provides: "It is further agreed that you are to receive 2½ per cent renewal overwriting commission on all renewal premiums on business written by and through your agency, on plans upon which the Company regularly pays renewal commissions," the foregoing provision seems to us to be clear and not subject to any ambiguity. Going back to section (e) of the agent's contract above quoted, there can be no doubt of the meaning of section (e), which provided that appellee was not entitled to commissions on business produced during any contract year not fully completed by the agent while in the service of the company. We think the effect of that provision is that appellant did not pay commissions regularly on any business produced for a partial year under the contract. Moreover, on June 30, 1943, appellant wrote appellee making certain changes

as to appellee's compensation with reference to his managerial contract, which made some changes with reference to the pay appellee would receive for his services as manager of the agency, but in paragraph (d) of the letter we find this statement which provides: "The Company agrees to continue to pay 2½ per cent renewal overwriting commissions on all renewal premiums on business written by you and by employees of your agency on plans upon which the Company regularly pays renewal commissions. Such renewal overwriting commissions shall not be paid in any event for a greater period than nine renewal years." We think it pertinent to remark that in this letter of June, 1943 the appellant again limited its liability to pay 2½ per cent renewal overwriting commissions on all renewal premiums on business written by appellee and members of his agency "on plans upon which the Company regularly pays renewal commissions." The Company's contract in this behalf was never changed and we see no ambiguity therein.

However, appellee puts much stress upon the construction put upon the contract by appellant and appellee when the question of renewal commissions arose after appellee's resignation. We quote the pertinent part of appellant's letter of April 10, 1951:

"Your future renewal commissions will be paid according to the following conditions:

"1. No renewal commissions will be paid after March 24, 1951 on any of the business written prior to that time by W. B. Anderson, T. J. Faver, G. W. Simpson, or J. C. Morgan. All of these agents had a debit balance with the Company at the time of their resignation, and the manager or district agent is not entitled to renewal commissions on agents leaving the Company under this condition.

"2. You are entitled to renewal commissions on all other agents in your agency on business written prior to April 15, 1950, but not any renewals on any business for any agent that was written after April 15, 1950. This restriction is based on sub-head "E" under section 9 of your contract. This provides that if you do not complete a contract year, you will not be entitled to any renewal commissions for any part of that contract year. Your contract was dated April 15, 1937, and you resigned on March 24, 1951. Therefore, you have not completed the current contract year, which would expire on April 15, 1951.

"3. You will be entitled to all renewal commissions on your personal business for the number of years provided in your contract. Such renewals shall be subject to the two per cent collection charge as set out in section 12 of your agency contract. We will terminate all three per cent life time service commissions."

It is appellee's position that since no contention was made in the letter of April 10, 1951, that the collection fee clause of the agent's contract, namely paragraph 12, was applicable to renewal overwriting commissions provided for appellee as branch manager is very significant, and appellee contends that such contention was advanced only after suit was filed in April 1955. Payments of overwriting renewal commissions made prior to the suit amounted to $19,778.87 on business produced by the agency prior to April 15, 1950, and that these were not subject to any collection fee.

Appellant's reply to the above is substantially to the effect that it has never, by word or act, placed any such construction on the "uncompleted contract year" clause and directs our attention to paragraph 2 of the quoted letter of April 10, 1951. Appellant in its reply to the above contention also says:

"It is true that appellant did not deduct the collection fee from the renewal commissions paid to appellee on the

agency business, as distinguished from personal production, up to the time that appellee filed his suit. It may have been out of deference to appellee's complaint as to what the money effect on him would be or that his services generally in the past justified a gracious attitude. That, however, is mere speculation. The circumstance was not explained on the trial. Appellant concedes that it is chargeable with knowledge of what it did in this respect, and it may have waived any right to recover, or have credit for, the overpayment of what was due as renewal commissions on the agency business. It stopped all payments when the suit was filed, however, and from that time on insisted, and still insists, that it has a right to charge the collection fee against all renewal commissions thereafter accruing."

In addition thereto appellant says that "during the whole time it paid renewal commissions to appellee after his resignation always withheld and refused to pay any renewal commissions on business written after April 15, 1950, either by appellee personally or by any of the agents under him. Appellee, of course, in his letter of April 25, 1951, insisted that appellant's construction was incorrect and that he would expect payment of all renewal commissions on business written during the uncompleted year. This was the last word in the argument, however, and appellee said nothing and did nothing about it, but, on the contrary, continued to receive appellant's accounting and payments until he filed his suit about four years later. Notwithstanding his initial protest, he apparently acquiesced in appellant's construction that the 'uncompleted contract year' clause applied to the overwriting renewals. It certainly cannot be said, therefore, that the parties put any construction on the contract contrary to appellant's present contention with regard to that clause." We are in accord with this

view. That leads us to say that we are of the view that the trial court erred in holding that the provision of the contract denying appellee any right to renewal commissions on any uncompleted contract year applied only to appellee's personal production and not to the production of the general agency under his supervision, and also that the court erred in holding that a provision of the contract for a charge of 2 per cent of the premiums against renewal commissions accruing after the agent's leaving the service of the company applied only to appellee's personal production and not to the production of the general agency under his supervision. See Paragraph 12 of the agency contract. Accordingly, points 1 and 2 are sustained, and this will require that this cause be reversed and remanded.

■ Appellant's third point relates to attorney's fees. Since we are of the view that this cause must be reversed and remanded in order that a proper accounting may be had between appellant and appellee for such sums as may be due and owing to appellee under the interpretation of the contracts here given, we think it is only proper to say here that the question of attorney's fees is controlled by Art. 2226, Vernon's Ann.Civ.St., as amended by Acts of the 53rd Leg., p. 101, Chap. 67, sec. 1, and the interpretation thereto given by our Supreme Court in Gateley v. Humphrey, 151 Tex. 588, 254 S.W.2d 98.

We are of the further view that the court erred in rendering a declaratory judgment for unaccrued commissions because of the interpretation we have given to the contract.

For the errors pointed out, this cause is reversed and remanded and the trial court is directed to allow each party to file such amended pleadings as they deem proper. The costs of this appeal are taxed against appellee.