LESLIE HUFF v. FIDELITY UNION LIFE INSURANCE COMPANY

No. A-6546. Decided April 16, 1958.
Rehearing overruled May 14, 1958.
(312 S.W. 2d Series 493)

*Bryan, Maxwell, Bryan & Wilson,* of Waco, *Thompson, Knight, Wright* and *Simmons, W. H. Neary, M. J. Wise* and *David M. Kendall, Jr.,* all of Dallas, for petitioner.

*T. B. Houston,* of Dallas, for respondent.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This cause originated in a district court of Dallas County, Texas, and is a suit by petitioner, Huff, as plaintiff against respondent, Insurance Company, as defendant. The plaintiff sued for renewal commissions as agent and renewal overwriting commissions as branch manager which he claimed defendant owed to him by virtue of certain written instruments, the material portions of which will be hereinafter set out. The cause was tried by the trial court without a jury. At the end of the case the trial court rendered judgment for plaintiff for a total of some $11,242.50, total commissions due on April 30, 1956, and for renewal and overwriting commissions for a definite period

not to exceed a total of nine years. On appeal the Court of Civil Appeals reversed and remanded the cause. 305 S.W. 2d 209.

On April 15, 1937, the defendant employed the plaintiff as its agent for the sale of its insurance contracts. This employment was by virtue of a certain printed contract from with the appropriate insertion of necessary and material information. This contract was signed by the agency manager, the president of defendant Company and by the plaintiff. It consisted of some three pages of printed matter, and, among other things, it provided for the remuneration which plaintiff was to receive for his services in selling defendant's policies of insurance.

The employment as branch manager was by means of a letter dated April 15, 1937 and signed by a vice president of the Company and addressed to plaintiff. This letter set out the compensation which plaintiff was to receive for his services as branch manager. The material parts of the letter are as follows:

"It is further agreed that you are to receive 2½ per cent renewal overwriting commission on all renewal premiums on business written by and through your agency, upon plans upon which the Company regularly pays renewal commissions."
* * *

"You may attach this letter to your regular contract to become a part of it and subject to its terms and provisions."

Defendant claims that the following provisions of the agency contract control the amount of money which it owes to plaintiff.

"9. (e) It is further agreed that no renewal commission shall be payable on the business produced during any contract year not fully completed by the agent while in the service of the Company, any volume of insurance written during such year and paid for in cashnotwithstanding."

And a portion of paragraph 12, as follows:

"12. * * * In the event of the termination of this contract under conditions that provide for the payment of renewal commissions, such renewal commissions shall be subject to a collection fee of 2 per cent of the renewal premiums * * *."

Plaintiff continued in the service of defendant until March 24,

1951 when he voluntarily resigned and left the Company's employ, thus lacking some twenty-odd days before completing the contract year which began April 15, 1950. Plaintiff contends that he is entitled to renewal overwriting commissions of 2½ per cent on all business produced by his agency up to March 24, 1951, while it is defendant's contention that he is entitled to such renewal overwriting commissions only up to April 15, 1950. Plaintiff further contends that such renewal overwriting commissions which he claims are not to be charged with the 2 per cent collection fee set out in paragraph 12. Defendant contends that the collection fee applies. No complaint is made of the trial court's judgment allowing renewal commissions to plaintiff as an agent for the Company on business produced up to April 15, 1950, nor to the charging of 2 per cent collection fee against such renewal commissions.

As the case reaches this Court it has resolved itself to a contest over (1) whether renewal overwriting commissions are payable on the production of the branch agency from April 15, 1950 to March 24, 1951, and (2) whether a 2 per cent collection fee should be charged against any renewal overwriting commissions. No authority has been cited that is of any assistance in the construction of the contract. It is the contention of both parties that the contract is unambiguous, although plaintiff has an alternate contention in the event we should hold the contract to be ambiguous. We have concluded that the contract, as set forth by the two instruments, is not ambiguous. The language "plans upon which the Company regularly pays renewal commissions" found in the paragraph of the branch agency letter refers to the 24 different policies set out in the first page of the agency contract under the heading "Schedule of Commissions". The word "plan" is used in this sense in paragraphs 3, 6, 7, 8 and 14 of the agency contract. We find that no renewal commissions are to be paid on seven of such plans. Three of these plans are term plans and four are single premium plans.

■ We shall first take up the contention that the 2 per cent collection fee set out in paragraph 12 above applies to the renewal overwriting commissions paid after the termination of the agency contract. The two instruments were prepared and signed the same day and by the same parties. The agency contract alone bears the approval of defendant's president. The provision of the branch agency contract that it is to become a part of the agency contract and subject to its terms and provisions can only mean that both instruments must be construed

together so as to make one consistent and enforcible contract. They will not be construed so as to cause a conflict between the provisions of the two instruments.

It is apparent that every provision of the agency contract cannot be made applicable to the branch agency letter. For instance, paragraph 2 of the agency contract provides for renewal commissions on various plans of insurance for the second year, ranging from zero to 10% of the renewal premiums. For the third and subsequent policy years, the renewal commissions are from zero to 5% of renewal premiums. To construe these provisions as governing the letter employing plaintiff as branch manager is to set aside the plain and definite language that for his services as branch manager plaintiff is to receive 2½ per cent renewal overwriting commissions on all renewal premiums on business written by and through that agency. It is admitted by both sides that this gave plaintiff an extra 2½ per cent commission on business personally written by him. Therefore, renewal commissions and renewal overwriting commissions on his own business must, of necessity, be two entirely separate and distinct subjects. Paragraph 3 of the agency contract does not apply to the branch contract letter for paragraph 3 covers only the commission on first year premiums and the method of increasing these; therefore, it has to do only with plaintiff as an agent. Paragraph 4 has to do with renewal commissions to be paid plaintiff as agent and provides that these commissions may be increased by 5% in certain designated instances. Paragraphs 6, 7 and 9-31, inclusive, all contain matters pertaining to the "agent", as contrasted to branch manager. The word "agent" is found in each and every one of the above paragraphs, and the language shows that the reference is to the selling agent and not to the branch manager. This leaves only paragraphs 1, 5, 8, 32 and 33 of the contract. Paragraph 1 is the formal opening and designation of parties paragraph and designates plaintiff as "agent." Paragraph 5 has to do with first year premiums, except it is provided no commission shall be paid on the premiums for a policy on the guaranteed coupon plan. Paragraph 8 provides that the Company shall determine the commission to be paid on any form of policy not specifically set out in the contract. This can govern the branch manager letter. Paragraphs 32 and 33 make no mention of agent or branch manager and will govern the branch manager letter. The agency contract refers only to renewal commissions and nowhere are the words "renewal overwriting commissions" found. The branch manager agency letter refers only to "renewal overwriting commissions"

and nowhere is there a reference to only "renewal commissions." From a reading of the two instruments it is clear that the provisions in the agency contract with regard to the rights, duties and liabilities of the "agent" are separate and distinct from the duties that devolve upon the branch manager.

It is clear that the parties contracted with reference to the plaintiff in two separate and distinct capacities—first, as an agent, and, second, as branch manager of the Temple office. There are elaborate provisions in the agency contract as to duties of the agent to deliver policies, collect first and renewal premiums and render other assistance to the Company. Paragraph 12 provides for a collection fee of 2 per cent on renewal premiums after the contract has been terminated. This is a reasonable provision as applied to plaintiff as agent because he may be earning as much as 10% renewal premiums on the business produced by him as such agent. This collection fee is to reimburse the Company for the expenses in performing the services which plaintiff, as agent, has agreed to perform. As applied to the 2½ per cent renewal overwriting commissions paid to plaintiff as branch manager, the 2 per cent collection fee is unreasonable. As such branch manager, plaintiff had not agreed to collect any renewal premiums. The Company had the right to charge the 2 per cent collection fee to the agent who wrote the business and who had agreed to assist in the collection of the renewal premiums. To permit the Company to charge this against such producing agent and also against plaintiff as branch manager is to write into the contract provisions not contained therein. It would enable the Company to charge a double collection fee of 2 per cent, or a total of 4 per cent. Furthermore, such construction is unreasonable and inconsistent with the terms of the two instruments. In the letter employing plaintiff as branch manager there is no provision for charging 2 per cent collection fee. We hold that the 2 per cent collection fee is not a proper charge against the renewal overwriting commissions.

■ We now come to the question of whether or not plaintiff is entitled to collect renewal overwriting commissions on the business of the agency from April 15, 1950 to March 24, 1951. The only provision in either of the instruments with regard to the payment of any commission to plaintiff for any part of a contract year is that contained in paragraph 9.(e) stating that "no renewal commission shall be payable [to the agent] on the business produced during any contract year not fully completed

by the Agent while in the service of the Company, * * *." This provision is a subdivision of paragraph 9 of the agency contract. Paragraph 9 sets out the details of paying *renewal* commissions to the *agent*. It bases the amount of renewal commissions to be received by the agent upon (1) volume of business produced in any contract years; (2) minimum production during any one-year period by the agent necessary to entitle the agent to *any* renewal commissions; (3) proration of volume during a lesser period than the first full year, as entitling agent to renewal commissions; (4) reasons for paying agent renewal commissions; (5) requiring the full premium to be paid before any renewal commissions are due; (6) clause (e) above discussed. The first paragraph of 9 has application solely and only to an agent. The subdivisions of 9 all likewise have no application to any one except an agent, and (e) specifically refers to the agent and shows on its face that its reference is to the agent. Having held that the parties have contracted with reference to "renewal commissions" and "renewal overwriting commissions" on separate bases, we likewise hold that paragraph 9 does not refer to or control the letter of April 15, 1937. The parties dealt with plaintiff in two separate capacities—as agent and as branch manager. His duties in each capacity were different and distinct. His remuneration was on a separate and distinct basis. The parties made separate provisions for the payment of "renewal commissions" to plaintiff as agent, and "renewal overwriting commissions" payable to him as branch manager.

We find no provision in the original agency contract, in the branch manager letter of April 15, 1937, or in any of the letters supplementing this original branch manager employment letter which limits the business on which renewal *overwriting* commissions will be paid to any period less than the full time plaintiff remains with the Company. The provision is to pay "renewal overwriting commissions on all renewal premiums on business written by and through your agency, * * *". We are not authorized to place any limitation on the business of plaintiff's agency which was not placed there by the parties at the time the contracts were made.

We hold that plaintiff is entitled to be paid his "renewal overwriting commissions" on all business produced by the agency up to March 24, 1951. Our construction of the agency contract and the letter employing plaintiff as branch manager makes these two instruments one consistent and one harmonious contract. We have not set aside any part of either instrument. We have given

effect to the intention of the parties to remunerate plaintiff in two separate capacities, viz., as agent and as branch manager. Any other construction and interpretation would produce inconsistencies and conflicts and would necessitate the disregard of provisions in both instruments.

■ The plaintiff contends that the Court of Civil Appeals was in error in reversing the judgment of the trial court for attorney's fees under Article 2226, Vernon's Annotated Civil Statutes of Texas. This Article provides that "any person having a valid claim against a person or corporation for personal services rendered, labor done, * * * may present the same to such person or corporation or to any duly authorized agent thereof; and if, at the expiration of thirty (30) days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment for any amount thereof as presented for payment to such person or corporation, he may also recover * * * a reasonable amount as attorney's fees, if represented by an attorney." Under this statute it has been held that a demand for a claimed amount due must be presented to the debtor alleged to owe the money to plaintiff, and that this demand must be made at least 30 days prior to a judgment in favor of claimant against the debtor. Gateley v. Humphrey, 151 Texas 588, 254 S.W. 2d 98 (1952); U. S. Life Ins. Co. v. Hamilton, Texas Civ. App., 1951, 238 S.W. 2d 289 (1,2).

Defendant asserts that the services rendered by plaintiff as branch manager were not such "personal services rendered" as to be included within the provisions of Article 2226. The only authority cited by defendant is the cause of U.S. Life Ins. Co. v. Hamilton, Texas Civ. App., 1951, 238 S.W. 2d 289, ref., n.r.e. While the above case denied a recovery of attorney's fees, such denial was not upon the ground that Hamilton's services as branch manager were not "personal services rendered" within the terms of Article 2226, but upon the ground that no claim or demand had been made by Hamilton upon the U. S. Life prior to the filing of his suit. The case of Government Personnel Mut. Life Ins. Co. v. Wear, Texas Civ. App., 1952, 247 S.W. 2d 284, reversed on another point and in part affirmed on a third point, 151 Texas 454, 251 S.W. 2d 525, held that the services of a branch manager were within the terms of the statute and permitted recovery thereof. On appeal this Court denied recovery of attorney's fees on the ground that Article 2226, prior to the 1949 amendment, did not authorize the recovery of attorney's fees in that suit. As to the meaning of

"personal services rendered", the Court stated it was not necessary to a decision of the case to define that term and accordingly did not do so.

In Craft v. Netherton, Texas Civ. App., 1955, 276 S.W. 2d 855, no writ history, it was held that the services of a real estate broker were within the provisions of Article 2226, and recovery of attorney's fees was allowed.

The case of Mitchell v. M.M.M. Inc., Texas Civ. App., 1953, 261 S.W. 2d 472, (2,3) held that the services of a professional engineer in installing airconditioning and refrigeration equipment in a steamship were "personal services rendered" and "labor done" so as to authorize recovery of attorney's fees under Article 2226. The Court said:

"* * * We have carefully reconsidered the question of whether the services for which plaintiff is here seeking to recover are for 'personal services rendered' or 'labor done'. This language is broad enough to include claims for every service rendered which involve mental or physical effort. See Felton v. Johnson, 112 Texas 412, 247 S.W. 837. In Bellinger v. Schutte, Texas Civ. App., 244 S.W. 2d 261, 264, writ refused, it was held that Art. 2226, as amended in 1949, must be construed in keeping with its plain unambiguous language. When so construed, we are constrained to hold that it embraces this claim, sued on by plaintiff."

On appeal to this Court, (153 Texas 277, 265 S.W. 2d 584), the judgment of the Court of Civil Appeals was reversed and judgment rendered that plaintiff take nothing because he had not paid the license fee required by statute as a prerequisite to his practicing his profession. See also Campbell Cleaning & Dye Works, Inc. v. Barnwell, Texas Civ. App., 1944, 183 S.W. 2d 256, ref.

Services of physicians and other professional men are personal services within the statute exempting earnings for personal services from execution. McCoy v. Cornell, Ward & Comings, 40 Ia. 457, 458. Services of "forelady" in a garment factory who also presses, designs and sews are personal services within the terms of a statute declaring salaries for personal services rendered to an assignor for benefit of creditor preferred claims against the assignee. Clark v. Marjorie Michael, Inc., (Cal.), 90 Pac. 2d 866 (1). We hold that the plaintiff's duties

as general manager are "personal services rendered" within the terms of Article 2226.

■ Defendant contends that plaintiff's pleading do not allege a demand was made upon it for payment of plaintiff's claim. We find that plaintiff, in his first amended original petition alleged that "it (sic) is entitled to recover in this suit a reasonable attorney's fee which plaintiff says is the sum of $5,000." Defendant excepted to this allegation "* * * because same is deficient in particulars and does not advise defendant what theory of law or fact is relied upon to support the claim for attorney's fees." This exception was nothing more than the old general demurrer. General demurrers were abolished in 1941 by Rule 90, Texas Rules of Civil Procedure. This same rule requires specific objections to defects, omissions or faults in a pleading; otherwise, there is a waiver of such defects, omissions or faults. Lawson v. Holloman, Texas Civ. App., 1951, 238 S.W. 2d 987, no writ history. See also National Life & Accident Ins. Co. v. Hines, Texas Civ. App., 1932, 50 S.W. 2d 364, no writ history.

The proof relied upon by plaintiff to show a demand consists of letters written by plaintiff to defendant in April of 1951. The plaintiff's last letter, dated April 25, 1951, ended by saying "I trust that this letter will be final and renewals will be forthcoming." This letter was the last letter in a series of letters between the parties. Defendant was contending that the provision for payment of the 2½ per cent renewal overwriting commission on the business produced by the branch office of which plaintiff was manager was subject to the provisions of paragraph 9.(e) of the agency contract; therefore, no renewal overwriting commissions were payable on business of the agency produced after April 15, 1950. Plantiff was demanding payment of renewal overwriting commission on all business produced by the agency up to March 24, 1951, the date of plaintiff's resignation. None of the other items involved in this suit were under discussion. Plaintiff also testified that about this same time he made oral demands upon the defendant for payment of renewal overwriting commissions to March 24, 1951. Defendant has never paid such commissions to plaintiff and they are one of the items for which plaintiff sued and was awarded a judgment by the trial court. This suit was originally filed some time in 1955, but the record does not show the exact date.

Between the time plaintiff resigned and the time he filed his suit, defendant was paying plaintiff both renewal and renewal

overwriting commissions through April 15, 1950 only, and was charging the 2 per cent collection fee against the renewal commissions only. As soon as plaintiff filed his suit defendant ceased to pay any commissions of any character. No demand, other than filing the suit, was ever made upon defendant after the exchange of correspondence between the parties. Filing of the suit is not a demand within the terms of the Statute. Metropolitan Life Ins. Co. v. Wann, 130 Texas 400, 109 S.W. 2d 470(3), 115 A.L.R. 1301, (1937), and numerous authorities therein cited; U.S. Life Ins., C. v. Hamilton, supra. The correspondence between the parties shows that plaintiff was at all times claiming the defendant owed him renewal overwriting commissions up to March 24, 1951, and that defendant was refusing to pay them. The oral demands and the letter asserting plaintiff's claims were made known to defendant and defendant contended it did not owe the items for which plaintiff was asserting his claim. In National Life & Accident Ins. Co. v. Dove, 141 Texas 464, 174 S.W. 2d 245 (1943), speaking of the requisites of a demand under what was then Article 4736, and which now is Art. 3.62 of the Insurance Code, it is said:

"* * * In order to meet the terms of the statute it is not indispensible that the demand be evidenced by firm and commanding language. It may be couched in the customarily-used polite language of the day. All that is required is the assertion of the right under the contract and a request for compliance therewith. * * *"

See also Penn Mutual Life Ins. Co. v. Maner, 101 Texas 553, 109 S.W. 1084, (1908). We hold that sufficient demand was made by plaintiff upon defendant to entitle plaintiff to recover attorney's fees.

■ Defendant pleaded the four-year statute of limitations as a bar to the recovery of attorney's fees as well as against other indebtedness owed by defendant to plaintiff. It has cited no authority sustaining this contention. Defendant claims that the cause of action for attorney's fees accrues thirty days after the demand is made on the debtor. Therefore, if the correspondence between the parties in April, 1951 and the oral demands made about the same time are held to be sufficient demands under Article 2226, the cause of action for attorney's fees arose at such time and would be barred in four years after this date. Plaintiff first asked for attorney's fees in his amended petition filed April 3, 1956. Article 2226 requires that a plaintiff must finally ob-

tain judment for any amount thereof (of the claim) as presented to the person or corporation before a reasonable attorney's fee can be recovered. While the attorney's fees are not part of the demand or claim, but are in the nature of a penalty, or punishment for failure to pay a just debt, (Davenport v. Harry Payne Motors, Inc., Texas Civ. App., 1953, 256 S.W. 2d 245, no writ history), and are not ordinarily recoverable in a tort or contract action, (Cleveland State Bank v. Lilley, Texas, Civ. App., 1924, 260 S.W. 324(2), no writ history), they may be recovered by compliance with the statutory provisions of Article 2226. That a suit for the statutory attorney's fees as a separate action could not be maintained is evident from the wording of the statute. Since the right to recover is dependent upon the recovery of a judgment on a claim, limitation against the recovery of these fees would follow the limitation on the claim. So long as the claimed debt was not barred, the right to recover attorney's fees under the statute would not be barred. The attorney's fees, while not costs, partake of the nature of the costs of suit and are assessed in accordance with the judgment. Houston Packing Co. v. McDonald, Texas Civ. App., 1915, 175 S.W. 806; J. H. Hubbard & Son, Inc. v. Greer, Texas Civ. App., 1953, 255 S.W. 2d 389, no writ history.

■ Plaintiff complains that the Court of Civil Appeals erred in not permitting a recovery of future renewal and renewal overwriting commissions which may accrue after the date of April 30, 1956. The judgment of the trial court entered in this cause fixed the definite amount of the recovery as through the month of April, 1956, and directed that plaintiff have recovery after April 30, 1956 of such renewal and renewal overwriting commissions as may become due under the contract. Defendant contends that plaintiff's pleadings are not sufficient to support this particular recovery. We have examined plaintiff's first amended original petition and find that he asked for judgment for "the present value of all renewal commissions which would, but for such breach [by defendant] have become due and payable in the future." Also he asked for the same relief with regard to renewal overwriting commissions. We hold that the trial court's judgment for future commissions as they accrue not to exceed nine years is correct.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

Opinion delivered April 16, 1958.

Rehearing overruled May 14, 1958