**R.N. STINE, et al., Plaintiffs,**

v.

**MARATHON OIL COMPANY, Defendant.**

**Civ. A. No. H–83–6175.**

United States District Court, S.D. Texas.

Dec. 28, 1990.

---

Steven C. Oaks, Houston, Tex., for plaintiffs.

Ben H. Schleider, Jr., Houston, Tex., for defendant.

## JUDGMENT FOR ATTORNEYS' FEES

HUGHES, District Judge.

### 1. *Introduction.*

This award of attorneys' fees results from seven years of litigation between joint owners of an oil and gas field in northwest Texas. At the trial, R.N. Stine and related people, doing business as Patland Oil Company, recovered from Marathon on claims of breach of contract, tortious interference, and negligent operation of the lease, as well as punitive damages. Although the judgment was against Marathon, the principal wrongdoer was Husky Oil Company, which Marathon acquired. From 1983 through 1988, Patland had four sets of lawyers in this litigation, but it chose only to seek fees for its counsel's work since 1988. Under Texas law, Patland is entitled to recover reasonable attorneys' fees from Husky.

### 2. *Presentment.*

■ Husky argues that to recover attorneys' fees on the claim for breach of contract, Patland must have presented Husky

with the fee claim. Patland was represented by an attorney, demanded payment on the contract from Husky, and Husky refused to pay Patland the amount owed; these are the only requirements under the Texas recovery statute. Tex.Civ.Practice & Remedies Code § 38.001–2.

Husky would have the Texas statute require a formal presentment of the attorneys' fees claim. Patland did not have to demand fees from Husky either at the time it demanded payment under the contract or independently. Patland did not have a right to fees at the time of the initial demand. The purpose of the statute allowing recovery of fees is to penalize defendants for not paying their debts within thirty days of the demand. Patland could not recover fees until Husky refused to pay its contract claim. *Jones v. Kelley,* 614 S.W.2d 95, 100 (Tex.1981).

No particular form of presentment of the contract claim is required. *Huff v. Fidelity Union Life Ins. Co.,* 158 Tex. 433, 312 S.W.2d 493, 500 (1958). An oral discussion about the amount of money owed and the method of payment is sufficient. *Lewis v. Deaf Smith Elec. Co-op., Inc.,* 768 S.W.2d 511 (Tex.App.—Amarillo 1989, no writ); *Chandler v. Mastercraft Dental Corp.,* 739 S.W.2d 460 (Tex.App.—Ft. Worth 1987, writ denied); *King Optical v. Auto Data Processing, etc.,* 542 S.W.2d 213 (Tex.Civ. App.—Waco 1976, writ ref'd n.r.e.).

Patland began corresponding with Husky about their differences long before the suit on the contract claim. Indeed, one of Husky's complaints about Patland was that it corresponded too much. Husky had numerous opportunities to tender payment and avoid additional liability for attorneys' fees.

### 3. *Segregation.*

This case was not a suit on an open account. It was not a suit on an account coupled with a property-damage tort claim. It was a series of claims arising from a lengthy and complex business relation between two groups. To divide the attorneys' time by jury issue or by complaint count would be transparently false preci-

sion. The work of lawyers in the progress of a case through trial is not an Orwellian assembly line of discrete jobs of quantifiable time and purpose. Lawyers should be compensated the highest for thinking. If, instead of appraising the value of critical analysis and effective effort, we sink to valuing lawyers by minutes or pages, we denigrate real counsel and elevate weak lawyering. The absorption in the detail of lawyers' fees is a triumph of technique over purpose.

In a case of this complexity, intensity, and length, segregation of issues may well be impossible, and it is not required. As the different aspects of the case shift in relation and weight, the pattern of the project changes constantly. Were there evidence of waste or other clear excess, the squandering would be deducted from the award. Patland's principal claim that it had been illegally treated by Husky through their contractual and relational ties was a success. Husky would have had Lincoln pay Grant, not for winning the war, but for those efforts that were specifically and independently successful.

Although the court believes the issues are not severable, Patland's testimony that 17% of the overall costs were attributable to non-contract issues is credible, and that is the figure supported by the evidence, if segregation should be required.

### 4. *The Factors.*

In determining the amount of money that would represent a reasonable fee for the prosecution of a case, the court must consider the factors that in reason would justify a particular level of compensation. The elements of a fair fee are:

A. Responsibility assumed (amount, importance)

B. Difficulty (complexity, novelty)

C. Effort (time required, time constraints, work, difficult opponent)

D. Result (small victory over impossible odds, large over good)

E. Opportunity costs (preclusion, unattractiveness)

F. Lawyer's position (ability, reputation, skill)

G. Risk of compensation (delay, contingency)

H. Market (awards, rates)

*Johnson v. Georgia Hwy. Express, Inc.,* 488 F.2d 714, 717 (5th Cir.1974); Model Code of Professional Responsibility, DR 2–101 (1987).

These factors are not precise; they overlap, reinforce, and conflict. As practicing law requires judgment, so setting fees requires judgment. Quibbling whether the lead counsel had ever tried an oil and gas case before this one is mindless credentialism. The question is not whether he was a certified anything, but whether he was capable.

### 5. *Client Agreement.*

■ The actual agreement between a party and its counsel can only be used to increase a regular cash rate award, and it cannot be used to limit the fee award to their private arrangement. Patland agreed to pay its lawyers an initial flat rate and a percentage of the recovery. This partial contingency agreement is the kind of client-agreement factor that can be used to raise an award from the regular cash fee because of the risks. If Patland's counsel had agreed to work for free, the defendant would still owe Patland an amount representing a reasonable fee.

### 6. *Paralegals, Attorneys, and Fees.*

■ A fee award to a lawyer is an installment of gross income to the enterprise that supports him. The attorney's fee includes rent, utilities, printing, equipment, travel, cleaning, bar dues, and every other category of expense that makes it possible to practice law in the modern world. The lawyer keeps only a portion of the total amount awarded. The difference is between a lawyer's fee and a lawyer's pay.

The question is: Should a lawyer account for his pay separately from the cost of his support services, or should he account for them together. An hourly rate of "$150 plus expenses" might well equal a rate of "$250 including expenses." Separate records for copies, travel, messengers, paralegals, and other substantial but subsidiary items may give the client a better picture of the proper fee, and it certainly is useful as an internal accounting technique for the lawyer.

When the items are segregated, they should not be excluded from the lawyer's fee because they are non-lawyer expenses. Consultants are research assistants to the lawyer; asking a banker what usually happens in a case is no different from the lawyer looking for the answer in the library. The courts would only drive up the costs of attorney's fees by requiring lawyers to do tasks that are better and more cheaply done by the people like paralegals who assist the lawyers.

Marathon's objections to Patland's fees are schizophrenic. On one hand it argues that the fees need to be segregated by claim or Patland should lose the fees, and on the other, argues that the expenses need to be disallowed because they were segregated.

### 7. *The Award.*

■ This case was based on a series of relationships; it involved arcane issues of joint operation law, analysis of layers of title documents, obstreperous discovery battles, affirmative defenses, years of records, high dollar damages, time consuming detail in mineral operations, and risk of partial non-payment. A cursory review of the docket sheet will reveal the intensity and volume of the struggle to complete this litigation. A reasonable fee for the services of legal counsel to represent Patland in this action since the appearance of its current counsel is $1,230,000, plus costs of court.