G & W MARINE, INC., Appellant,

v.

Richard E. MORRIS, Appellee.

No. 7278.

Court of Civil Appeals of Texas,
Beaumont.

Sept. 16, 1971.

Jack R. King, Beaumont, for appellant.

Morris, Smith & Peveto, Orange, for appellee.

KEITH, Justice.

The appeal is from a judgment which awarded plaintiff a recovery for additional compensation claimed to be due under a written contract of employment reading as follows:

"The undersigned parties hereby agree to the following terms of employment of Richard E. Morris.

"Mr. Morris to be employed as Manager of the Orange, Tex. G. & W Marine Inc. store, to be paid 40% of the net profits from that store, with a guaranteed salary of $200.00 dollars per week. Salary of $200.00 to be paid weekly, and excess based on 40% net profit of store to be paid yearly, at first of year."

The contract did not define "net profits" and the dispute arises because of the im-

pact of federal corporate income taxes upon the subject matter. Omitting all consideration of the federal corporate income tax, the Orange store produced a pretax profit for the year involved of $39,918.37, and plaintiff recovered judgment for the difference in what he had received ($10,-400.00) and 40% of the pre-tax profit of the store, or the sum of $5,567.34. On the other hand, defendant contends that in order to determine "net profits," the federal corporate income tax assessed against the earnings of the Orange store should be deducted and plaintiff's additional recovery confined to 40% of the remaining sum. Under this construction of the contract, plaintiff would not be entitled to any recovery in this suit.

The court submitted one issue to the jury which we quote in the margin,[1] and, upon an answer favorable to the plaintiff, entered judgment for the amount sought but denied plaintiff attorney's fees and interest thereon. Defendant contends that the trial court erred in submitting any issue of fact to the jury that there was no evidence to support the jury's answer to the single special issue. Alternatively, defendant says that the evidence was insufficient to support such answer. Plaintiff has cross-points complaining of the denial of the attorney's fees and interest upon the recovery. Defendant's fourth point capsules its contention in the case: "The only issue to be determined was the legal meaning of the term 'net profit' when applied to a corporation."

The corporation owned three stores and the parties are in agreement as to all other deductions from the cost of doing business except the corporate income tax due by the defendant. Our record does not show what was earned or lost in the other two stores nor does it show that the corpora-

1. The Special Issue read: "Do you find from a preponderance of the evidence that it was not the intention of the plaintiff and the defendant to consider corporate income taxes in the computation of the plaintiff's salary under his employment contract dated September 13, 1967?"

tion paid any income tax for the year involved.[2]

The three principals, plaintiff and the two controlling stockholders-officers of the defendant, all testified that income taxes were not considered at the time of the execution of the contract and the subject was not mentioned until after the close of the year's business. This being the first year of the operation under the contract, there was no prior history of how the parties had treated the question. Cf. Lone Star Gas Co. v. X–Ray Gas Co., 139 Tex. 546, 164 S.W.2d 504 (1942); United Founders Life Insurance Company v. Carey, 363 S.W. 2d 236, 243 (Tex.Sup., 1962).

Plaintiff contended that the contract was ambiguous and that he was entitled to recover his 40% of the net profits before payment of the federal corporate income taxes. He attached a copy of the contract to his petition as an exhibit and alleged that "it was understood between the parties at the time the employment contract was entered into that plaintiff's salary" would be based upon net profits which "meant net profits before corporate income taxes." Cf. Curry v. Texas Co., 8 S.W.2d 206, 213 (Tex.Civ.App., Eastland, 1928, error dism.).

Defendant, on the other hand, contends that the term "net profits" refers to the sum which remained after the deduction of federal corporate income taxes. In its brief, defendant says:

> "Appellant has from the beginning of the controversy contended that the only issue to be resolved in this case is the legal meaning of the term 'net profit' when applied to a corporation."

The rules governing the interpretation of a contract are collated with remarkable clarity in the case of Hennigan v. Chargers Football Company, (5th Cir., 1970), 431 F.2d 308, 314:

> "In Texas, whether the language of a contract is ambiguous is a question of

law for the court. Maryland Casualty Co. v. State Bank & Trust Co., 5 Cir., 1970, 425 F.2d 979; City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex.1968). If the contract in issue is unambiguous, its interpretation and construction are part of the court's law obligation. City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex.1968); Myers v. Gulf Coast Minerals Management Corp., 361 S.W.2d 193 (Tex.1962).

> "A Texas court will deem a contract ambiguous if the contract, after established rules of interpretation have been applied to its language, remains reasonably susceptible to more than one meaning. If the contract is not reasonably susceptible to more than one meaning, the effect to be given it will be determined, in the usual case, from the contract language alone, without resort to other evidence or to consideration of the conduct of the parties in attempting to comply with its terms or with the terms of similar previous agreements. City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex.1968); Pritchard & Abbott v. McKenna, 162 Tex. 617, 350 S.W.2d 333 (1961). * * * [S]ee Woods v. Sims, 154 Tex. 59, 273 S. W.2d 617 (1954). See also Butts v. Somers, 441 S.W.2d 288, 289 (Tex.Civ. App.—El Paso 1969, no writ); L. A. Durrett & Company v. Iley, 434 S.W.2d 367, 370 (Tex.Civ.App.—Dallas, 1968, writ ref'd n. r. e.).

> "When a question relating to the interpretation and construction of a contract is presented to a court applying Texas law, the court is to follow a three-step procedure so far as is necessary to determine the meaning of the contract, that is, the court is to '[1] take the *wording* of the instrument, [2] *consider the same in the light of the surrounding circumstances*, and [3] apply the pertinent rules

---

2. Plaintiff suggests that if the other two stores had losses equal to the pre-tax profit of the Orange store, the corpora-

tion would not have been required to pay *any* federal income tax.

of construction.' City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 519 (Tex.1968) (emphasis in the original); Spence & Howe Construction Co. v. Gulf Oil Corp., 365 S.W.2d 631 (Tex.1963). * * *"

The definition of ambiguity is well established in Texas, one of the more recent expressions on the subject being found in the case of Neece v. A.A.A. Realty Co., 159 Tex. 403, 322 S.W.2d 597, 600, footnote 3 (1959) wherein the late Justice Norvell paraphrased language from Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154, 157 (1951), saying:

"A contract is ambiguous if, after applying established rules of interpretation to the contract, it remains reasonably susceptible to more than one meaning."

See also: Superior Oil Co. v. Stanolind Oil & Gas Co., 150 Tex. 317, 240 S.W.2d 281, 284 (1951); Trinity Universal Ins. Co. v. Ponsford Brothers, 423 S.W.2d 571, 575 (Tex.Sup.1968).

The chameleon-like term "net profits," standing alone and otherwise unexplained, has plagued the courts for many years. In Dealers' Granite Corporation v. Faubion, 18 S.W.2d 737, 739 (Tex.Civ.App., Austin, 1929, no writ), the court said:

"What constitutes the net profits of a corporation has been variously defined in numerous jurisdictions. See 14 C.J. 803; 45 C.J. 1386; 7 R.C.L. § 261, p. 284; 3 Words and Phrases, Second Series, 592; 3 Bouv.Law Dict. p. 2737; Cook on Corporations (6th Ed.) vol. 2, p. 1479; Thompson on Corporations (3d Ed.) vol. 7, p. 169 et seq. In the very nature of things the many and varied kinds of enterprizes which corporations are authorized by law to engage in make it impossible to measure 'net profits' of all of them by any one rule. The diverse character of their operation, and the differing circumstances under which the questions are raised, give rise to a variety of definitions of this term. No good purpose would be served by a discussion here of the numerous definitions. It is, to a large degree, self-explanatory and implies, generally speaking, what remains in the conduct of a business after deducting from its total receipts all the expenses incurred in carrying on the business. Eyster v. Centennial Board, 94 U.S. 500, 24 L.Ed. 188; Mobile & O. Ry. Co. v. Tennessee, 153 U.S. [486] 495, 14 S.Ct. 968, 38 L.Ed. [793] 797. To such expenses may be charged taxes, upkeep, depreciation, and interest on the corporation's debts, but not interest on its capital."

In Hall v. Brown, 398 S.W.2d 404, 408 (Tex.Civ.App., Waco, 1966, no writ), the court said:

" 'Profits are the net pecuniary gain from a transaction, the gross pecuniary gains diminished by the cost of obtaining them.' American Law Inst., Restatement, Contracts, Sec. 331(b). 'Plaintiff is entitled to his net profits—not to his expected gross profits.' Net profit is defined as the 'gross amount that would have been received pursuant to the business or investment' less 'the costs of running that business or attending that investment.' 22 Am.Jur.2d, Damages, Sec. 178, p. 254. See 50 A.L.R. 1397."

Or, as was said in Stapper v. Van Valkenburgh & Vogel, 128 S.W.2d 466, 467 (Tex.Civ.App., Amarillo, 1939, error dism., judgm. cor.):

"In our opinion, the words 'net profits' in the contract under consideration were used in their usual and ordinary sense. 'In a contract of service whereby the plaintiff was to receive, in lieu of a salary, "five per cent of the net profits" of the business, "net profits" means the money received from the sale of goods after deducting their cost and expenses.' "

See also, Giles v. Rayburn, 173 S.W.2d 371, 373 (Tex.Civ.App., San Antonio, 1943, no writ).

At a time when the impact of corporate income taxes was not as great as it is now, it was said by the Supreme Court of Louisiana in Homes v. James Buckley & Co., 165 La. 874, 116 So. 218, 219 (1928):

"The tax annually exacted by the federal government on net corporate income means, simply, that every dollar of net profit earned by a corporation during the year must bear a certain charge for governmental purposes. It is immaterial whether such charge be designated as an expense or a profit sharing tax, neither the profits of a corporation, nor any one interested in its profits, is immune from its operation. The federal corporate income tax is, therefore, an expense of the corporate business. * * *"

Defendant calls to our attention the case of Roth v. Embotelladora Nacional, 1 A.D.2d 403, 150 N.Y.S.2d 887, 889 (First Dept., 1956), wherein there the court quotes from several textbooks upon accounting. The consensus of the authorities, as stated by the court in its opinion, is that in such a contract as we have before us, "income taxes are deducted before net profits are determined."

The question is, however, not quite as simple as the answer given in the New York case just cited would indicate. For instance in a well reasoned opinion, the Supreme Court of Pennsylvania, in Maguire v. Osborne, 384 Pa. 430, 121 A.2d 147, 151 (1956), said:

"As a term of art, net profits may mean two different things, depending upon its contextual relation. If the term is used for the determination of the amount of a liability for a business expense, such as compensation to employees, it necessarily means net profits before the payment of income and profits taxes. Such taxes are assessed only on net income after deduction of all operating expenses; necessarily, therefore, a portion of net profits payable to employees as compensation (viz., a business expense) must be determined and deduct-

ed before the net income subject to tax can be ascertained. If, however, the term net profits is intended to define the earnings available for distribution among stockholders by way of dividends or for allocation to earned surplus, it means the net profits after the payment of the taxes on the ascertained amount of the net income subject to tax."

The New Jersey Supreme Court reached a similar result in Smith v. Peninsula House, Inc., 65 N.J.Super. 341, 167 A.2d 807, 809 (1961), saying:

"The meaning of the term 'net profit' is not fixed and invariable, but depends upon the setting in which it is used. See, generally, Note, 51 Colum.L.Rev. 867 (1951); Washington, 'The Corporation Executive and His Profit-Sharing Contract,' 50 Yale L.J. 35 (1941); Annotation, 'Construction of "net profits," "earnings," or the like, in provision for profit-sharing bonus for corporate officers of employees,' 49 A.L.R.2d 1129 (1956).

* * * * * *

"The 'net profit' of a corporation cannot be determined in a vacuum. Its precise meaning must be garnered from the context in which it is used. Thus, net profit for federal income tax purposes might be quite different from net profit for the purposes of a corporate financial statement."

Similar language was used in Missouri when the court said in Harvey v. Missouri Valley Electric Co., 268 S.W.2d 820, 49 A.L.R.2d 1124, 1127 (Mo.Sup., 1954):

"The meaning of 'net profits' and what is included therein varies according to the context in which, and the circumstances under which, the words are used. 'The words in bookkeeping language mean a balance, or what remains after something has been deducted. What the deduction shall be, or what it shall include, must be determined from the occasion for the use of the words, or from

the context * * *' Iowa Southern Utilities Co. v. Cassill, 8 Cir., 69 F.2d 703, 707.

\* \* \* \* \* \*

"It has been said that: 'It is contrary to the concept of profit-sharing to have any part of the bonus charged against the recipients' share of the profits.' Winkelman v. General Motors Corp., DCSDNY, 44 F.Supp. 960, 1000; Diamond v. Davis, Sup., 62 N.Y.S.2d 181, 193."

■ The trial court, from the wording of the contract and the surrounding circumstances, determined that the contract was susceptible of more than one meaning and was, therefore, ambiguous. Extrinsic evidence, thereupon, became properly admissible to remove the ambiguity of the words used in the contract. *Ponsford Brothers* case, supra. (423 S.W.2d at p. 575.) The court properly excluded evidence of the subjective undisclosed thoughts and beliefs of the parties. *Stapper* case, supra. (128 S.W.2d at p. 467.) The plaintiff, having declared upon an ambiguity in the contract, had the burden of persuasion upon the issue of fact raised by the evidence. Skelly Oil Company v. Archer, 163 Tex. 336, 356 S.W.2d 774, 779 (1962). And, it was for the jury to resolve the issue as to the intent of the parties. *Ponsford,* supra.

We have reviewed the evidence tendered by the parties and find that the response of the jury to the single special issue finds adequate support in the probative evidence. Defendant's points are, therefore, overruled.

Plaintiff complained in his motion for new trial of the denial of interest upon his recovery and the refusal of the trial court to award attorney's fees under Art. 2226, Vernon's Ann.Civ.St. Defendant made no attempt to limit the appeal [see Texas Rules of Civil Procedure, rule 353(c)] and plaintiff has filed appropriate cross-points challenging these two adverse rulings.

■ Defendant does not challenge, in its reply brief, plaintiff's demand for interest upon his recovery; and, indeed, it is difficult to understand the trial court's denial thereof. By statute, " 'Interest' is the compensation allowed by law for the use or forbearance or detention of money." Article 5069–1.01(a), V.A.C.S. The statutory definition is in accord with that adopted by the courts. Sherrill v. Phillips, 405 S.W.2d 627, 633 (Tex.Civ.App., Austin, 1966, error ref. n.r.e.). The rate of interest not having been specified by the parties, plaintiff should have recovered interest at the legal rate of six percent per annum from the date the sum became due and payable, January 1, 1969. Article 5069–1.03, V.A.C.S., Federal Life Ins. Co. of Chicago v. Kriton, 112 Tex. 532, 249 S.W. 193, 195 (1923). Therefore, we sustain plaintiff's first cross-point and modify the judgment of the trial court so that plaintiff's recovery of additional compensation will bear interest thereon at six percent per annum from January 1, 1969, until paid.

■ In his second cross-point, plaintiff contends that the trial court erred in denying him a recovery for his attorney's fees which he claimed under the provisions of Art. 2226, V.A.C.S. The parties stipulated that the sum of $2,500 would be a reasonable fee for the services of plaintiff's attorney, if such were allowable. Defendant responds to this demand by asserting that plaintiff has proceeded under a "special contract," and the contract being silent as to attorney's fees, he may not recover.

Chief Justice Calvert's scholarly review of Art. 2226 found in Tenneco Oil Company v. Padre Drilling Company, 453 S.W.2d 814, (Tex.Sup., 1970), has done much to clarify the conflicting holdings of the several Courts of Civil Appeals in this area of the law. It does not, however, completely answer the contentions made by the parties in our case. Our plaintiff cites and relies upon one case [Danaho Refining Company v. Dietz, 398 S.W.2d 307 (Tex.Civ.App., Corpus Christi, 1965, error ref., n. r. e.)] which was approved in *Tenneco.* He also

relies heavily upon another case [Dueitt v. Barrow, 384 S.W.2d 214 (Tex.Civ.App., Corpus Christi, 1964, no writ), which was expressly disapproved in *Tenneco.*

Defendant, on the other hand, contending that plaintiff sought his recovery upon a "special contract" which did not mention attorney's fees, relies upon Eisenbeck v. Buttgen, 450 S.W.2d 696, 702 (Tex.Civ. App., Dallas, 1970, no writ). Although the factual basis of *Eisenbeck* is not precisely that which we have before us, its analogy is clear. Basically, in our case, plaintiff sought a division of the profits as a part of his wages. Although he contends that he is entitled to the attorney's fees because of his unpaid claim for wages, he predicates his claim entirely upon a division of the profits from the undertaking. It is, truly, a special contract as mentioned in *Eisenbeck* and cases therein cited.

■ Although the question is not free of doubt, we have concluded that plaintiff is not entitled to recover attorney's fees in this case. Assuming, arguendo, that he sought a recovery for wages under Art. 2226, he invoked a statute which was penal in character and one to be strictly construed. Van Zandt v. Fort Worth Press, 359 S.W.2d 893, 895 (Tex.Sup., 1962). The statute which plaintiff invoked authorizes the recovery of attorney's fees when a claim presented to the debtor has not been paid within the thirty-day period thereafter. As has been said in another case, "We find no evidence in this case showing or tending to show that appellee presented any kind of claim whatsoever to appellant[s] prior to the institution of this suit. * *" U. S. Life Ins. Co. v. Hamilton, 238 S.W. 2d 289, 291 (Tex.Civ.App., Waco, 1951, error ref. n. r. e.). And, plaintiff recovered his judgment upon an original petition, not upon amended pleadings filed more than thirty days thereafter.

■ It seems well settled that formal demand for payment must be made before liability for attorney's fees under the statute accrues. Gateley v. Humphrey, 151

Tex. 588, 254 S.W.2d 98, 100 (1952). And, it is equally clear, as was said by Justice Griffin in Huff v. Fidelity Union Life Insurance Company, 158 Tex. 433, 312 S.W. 2d 493, 500 (1958): "Filing of the suit is not demand within the terms of the Statute." Justice Griffin was considering the identical statute which we have before us, Art. 2226, V.A.C.S. Plaintiff's second cross-point is overruled.

The judgment of the trial court is modified to include interest upon the sum of $5,567.34 at the rate of six percent per annum until paid, and is, in all other respects, affirmed.

Modified and affirmed.