**WHEELWAYS INSURANCE COMPANY and Maguire Insurance Group, Appellants,**

v.

**Marcia HODGES, Appellee.**

No. 06-93-00044-CV.

Court of Appeals of Texas, Texarkana.

Argued Jan. 27, 1994.

Decided Feb. 18, 1994.

---

P. Michael Jung, Strasburger & Price, Dallas, John M. Smith, Roberts, Harbour Law Firm, Longview, for appellants.

Jack B. Baldwin, Baldwin & Baldwin, Marshall, John Holland, Arlington, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Wheelways Insurance Company appeals from a judgment entered in favor of its insured's assignee, Marcia Hodges. The pivotal question on appeal concerns whether the trial court erred in determining the amount

of actual damages as a matter of law. Other questions involve the award of punitive damages, the propriety of a partial summary judgment barring Wheelways from asserting its contractual defenses, and a jury instruction that Wheelways had a duty to defend its insured, Donald Harvey. We affirm the judgment insofar as it finalized a partial summary judgment against Wheelways. We resolve the pivotal question in favor of Wheelways, reverse the remainder of the judgment, and remand the cause to the trial court for a new trial.

The underlying cause of action was based upon a car accident that occurred in Arlington, Texas, on January 2, 1989, between Hodges and Donald Harvey. Harvey was driving a rental car owned by Capps Rent–A–Car of Dallas and leased to Harvey's friend, Colle Davis. Capps' insurer was Wheelways. Capps had procured its insurance coverage through an insurance purchasing group, the Lessors and Renters Association, Inc., domiciled in Pennsylvania and formed pursuant to the federal Liability Risk Retention Act, 15 U.S.C.A. §§ 3901, et seq. (West 1982 & Supp.1993).[1]

Wheelways' policy covering Capps provided that bodily injury liability was limited to $20,000.00 per person and $40,000.00 per accident. Wheelways provided primary coverage to Capps, authorized users of Capps' vehicles, and those vicariously liable for the acts or omissions of Capps or its authorized users. The insurance policy also covered drivers not disclosed to Capps on the rental

agreement to the extent of statutory minimum limits. If the driver has any other insurance coverage, then Wheelways' coverage is only as excess insurance.

The rental contract did not list Harvey as the renter or as an authorized driver of the leased automobile. In addition, Davis, who rented the car, had declined liability insurance coverage on the car and certified that he had his own primary insurance coverage through State Farm Insurance Company and that the insurance was transferable to the leased car. Without first contacting State Farm, reviewing the State Farm insurance policy, or otherwise verifying that State Farm provided coverage, Wheelways wrote to Hodges' attorney on March 1, 1989, and recommended that Hodges contact State Farm to settle her claims.[2] After that letter, Wheelways took no further steps to handle the claim or determine whether State Farm actually had coverage. Had it examined the policy, it would have been apparent that State Farm had no coverage.

Hodges obtained a default judgment against Harvey in the amount of $250,000.00, excluding interest and court costs, in October 1989. Wheelways was not notified and had no knowledge of that suit. Wheelways learned of the default judgment in November 1990.

Hodges filed suit against Wheelways, Maguire Insurance Group, and State Farm on January 8, 1991.[3] Hodges' petition alleged breach of contract, breach of the duty of good faith and fair dealing, negligence, and

1. The Association was domiciled in Pennsylvania at the time Capps acquired its insurance, but its domicile has since moved to Texas because of a shift in the location of the group's highest amount of premiums. *See* Tex Ins.Code Ann. art. 21.54, § 2(14) (Vernon Supp.1994) (the purchasing group's location is the state in which the highest aggregate premiums are in force).

2. The text of the letter is as follows:
Dear Mr. Hundly:
This will acknowledge receipt of your January 23, 1989, letter, that you forwarded to Donald Harvey.
Please be advised that Mr. Harvey was not an additional named driver under the rental contract. Mr. Colle Davis was the actual rentee and he declined the liability coverage and advised that his personal carrier would provide coverage. Mr. Davis was insured with State Farm Insur-

ance Company at the time of the loss. We recommend that you contact State Farm Insurance Company to settle your clients [sic] claims.
In the event of any questions please contact the undersigned and refer to the above listed claim number. Thank you for your time and attention in this matter.
Very truly yours,
Kenneth M. Lipowitz
Claims Examiner

3. State Farm subsequently moved for and received a directed verdict and was dismissed from the suit. The trial court ruled that, as a matter of law, Davis' policy with State Farm did not provide coverage for Harvey. Maguire Insurance Group is in the suit merely as Wheelways' parent company and is not mentioned hereafter.

violations of the Deceptive Trade Practices Act and Insurance Code. Hodges sued in her own right, pursuant to a turnover order entered by the trial court that granted the default judgment, and as the assignee of Harvey.[4]

The jury found for Hodges on theories of negligence and violations of the Deceptive Trade Practices Act (DTPA) and the Insurance Code.[5] The jury also awarded Hodges $200,000.00 damages for her mental anguish, a substantial sum of exemplary damages individually and as Harvey's assignee, and attorneys' fees for Wheelways' statutory violations. The trial court reduced the exemplary damages by applying the cap of Section 41.-007 of the Civil Practice & Remedies Code, but otherwise rendered judgment on the verdict. See TEX.CIV.PRAC. & REM.CODE ANN. § 41.007 (Vernon Supp.1994).

The judgment is bifurcated and consists of a primary judgment awarding a total common-law recovery of $3,255,655.00 for Wheelways' negligence and an alternate judgment awarding a total recovery of $2,734,750.00 under the Deceptive Trade Practices Act and the Insurance Code. The alternate judgment becomes effective if the primary judgment is stricken or reformed so that it is less than the total amount awarded in the alternate judgment.

## EXTRACONTRACTUAL DAMAGES

■ Wheelways contends that the trial court erred in determining the amount of actual damages as a matter of law. It claims that there was no or factually insufficient evidence to support the jury's findings that Wheelways' negligence and deceptive acts or practices caused the extracontractual damages suffered by Harvey.[6]

■ This case is similar to *United Servs. Automobile Ass'n v. Pennington*, 810 S.W.2d 777, 784 (Tex.App.—San Antonio 1991, writ denied), in that it seeks damages from the insurer for its wrongful handling of and refusal to defend a claim filed against its insured. Both this case and *Pennington* are based on an expanded view of the *Stowers* doctrine as set forth in *Ranger County Mut. Ins. Co. v. Guin*, 723 S.W.2d 656, 659 (Tex. 1987). In *Stowers*, the rule was announced that an insurer may be liable for damages resulting from its negligent failure to settle a case within policy limits. *G.A. Stowers Furniture Co. v. American Indem. Co.*, 15 S.W.2d 544, 547 (Tex.Comm'n App.1929, holding approved). In *Ranger County*, this rule was expanded to include investigation of the claim, preparation for defense of the lawsuit, trial of the case, and reasonable attempts to settle. *Ranger County*, 723 S.W.2d at 659. In other words, an insurer may be liable to its insured for a judgment in excess of the policy limits when caused by the insurer's negligent handling of the claim. An insurer is not liable for extracontractual damages, however, unless the damages were proximately caused by the insurer's wrongful conduct. *American Physicians Ins. Exch. v. Garcia*, 36 Tex.S.Ct.J. 406, 410–11 (Dec. 31, 1992) (rehearing pending).[7]

---

4. Hodges and Harvey entered into an agreement entitled "Executory Agreement, Assignment and Covenant to Delay Execution." This assigned Harvey's rights against the insurance companies to Hodges. In consideration for this assignment, it was provided that if the amount of the judgment or settlement against the insurance companies was enough to satisfy the judgment against Harvey, the judgment against him would be discharged. Harvey also retained a right to receive twenty-five percent of the exemplary damages actually recovered from the insurance companies.

5. See TEX.BUS & COM.CODE ANN. § 17.46 (Vernon 1987 & Supp.1994); TEX.INS CODE ANN. art. 21.21 (Vernon 1981 & Supp.1994).

6. Wheelways' first point of error is that, "The award of damages based on the amount of the underlying judgment was erroneous." Within that point of error it has subpoints A and B in which it argues legal and factual insufficiency of the evidence to support a finding that Wheelways' conduct caused the damages awarded by the court.

7. As noted, the *American Physicians Mutual Ins. Exch. v. Garcia* case, decided December 31, 1992, is pending rehearing. Thus, that case is not final and, therefore, not part of the jurisprudence of this state. However, there are significant issues before the supreme court in that case which, when finally resolved, will have a bearing on further proceedings in this case. Questions in *Garcia* include the extent to which and when covenants not to execute might be void as against public policy and might negate damages stemming from an insurer's negligence or bad faith in

The jury found that Wheelways was negligent and in violation of the DTPA and the Insurance Code. For Hodges to be entitled to recover damages for this wrongful conduct, there must be legally and factually sufficient evidence showing that Wheelways' conduct was a producing or proximate cause of the damages awarded.

■ When no evidence and factual sufficiency points are raised, we address the no evidence point first. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981). In reviewing a no evidence point, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992). If there is any evidence of probative force to support the finding, we overrule the point of error and uphold the finding. *In re King's Estate*, 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951). With these standards in mind, we turn to the evidence.

At trial, experts testified that Wheelways' conduct caused the entry of the default judgment against Harvey. However, there is no testimony or evidence to indicate that Hodges' suit against Harvey could have been settled or resolved for an amount within policy limits or for anything less than the $250,-000.00 awarded in the default judgment. *See Pennington*, 810 S.W.2d at 784 (limiting damages to the policy limits absent proof that the excess amount of the judgment was a foreseeable result of the insurer's conduct). No offers of settlement were made. No evidence shows how Wheelways' negligence or unfair or deceptive acts caused the excess judgment rendered against Harvey as compared to what the damages or the underlying judgment would have been had Wheelways not acted negligently or not engaged in the unfair or deceptive acts or practices. We conclude that no evidence shows that Wheelways' conduct caused the damages awarded.

■ Under most circumstances, this conclusion would make further inquiry unnecessary. However, it is apparent that no fur-ther proof regarding causation was adduced because both Hodges' attorneys and the trial court were operating under an erroneous view of the law.

■ Hodges' attorneys did not request, and the trial court did not submit to the jury, any question concerning the actual damages. The stated reason given by the trial court was that damages were "automatic." In support of this, Hodges' attorneys rely on the opinion in *Allstate Ins. Co. v. Kelly*, 680 S.W.2d 595, 606 (Tex.App.—Tyler 1984, writ ref'd n.r.e.). In that case, as in this, the trial court submitted a question asking whether the defendant's conduct caused the entry of the judgment. *Id.* at 601. In *Kelly*, no damage question was submitted; the court of appeals held that none was needed because the damages in that case were fixed as a matter of law in the amount of the excess of the underlying judgment over the applicable policy limits. *Id.* We disagree with this narrow part of the holding in *Kelly*. Generally, the existence of an underlying judgment constitutes some evidence of actual damages. *Montfort v. Jeter*, 567 S.W.2d 498, 500 (Tex. 1978); *see generally* Frank L. Branson & Joel M. Fineberg, *Stowers, bad faith, equitable subrogation and pretrial covenants not to execute*, 27 FORUM 23, 24 (1993) (reviewing the *Stowers* doctrine and related cases). While the judgment is evidence of damages, it does not fix or establish damages as a matter of law. In this case damages are a fact question.

In the current *Garcia* opinion, the court notes that in this type of case the insured's damages may include the amount of the underlying judgment and additional damages. 36 Tex.Sup.Ct.J. at 410–11 n. 11. The court observed that damages might include the value of the loss of the fair chance to defend the case or settle before trial, stress caused by the wrongful conduct, and damage to reputation. *Id.* We believe that there can be many forms of harm that can result in cases like this.

Likewise, there are matters which might cause a reduction in damages. When, for

breaching duties under the *Stowers* and *Ranger County Mutual* decisions under circumstances similar to those in this case.

instance, an insured, for consideration, receives a covenant not to execute on a judgment, damages are reduced. Although Harvey was not given a covenant not to execute, he was given a "covenant to delay execution," which contemplates that, if the entire amount of the judgment against Harvey is recovered from the insurance companies, Harvey shall be fully discharged. This covenant to delay execution of the judgment might be considered by a fact finder as a factor tending to diminish the actual damages suffered by Harvey.

Answering the evidentiary contentions, we hold that the default judgment is some evidence of the extent of damages, but that there is no evidence that the damages were proximately caused by Wheelways' conduct. We also hold that the trial court erred in rendering judgment for actual damages in excess of the policy limits because the damages are not established as a matter of law and were not determined by the jury based on the evidence.

Had Hodges' attorneys been aware that the law required more than mere proof that Wheelways' conduct caused the entry of the default judgment, there may well have been additional evidence. Although we sustain the no evidence point in this instance, rendition of judgment is not appropriate. This case was tried under an improper theory of the law regarding damages. In such instances, we are empowered, in the interest of justice, to reverse and remand for a new trial. *See Box v. Au Forgeron de la Cour–Dieu, Inc.,* 708 S.W.2d 538, 541 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.), and *United States Fire Ins. Co. v. Carter,* 473 S.W.2d 2, 3 (Tex.1971). In the interest of justice, a remand of this case is the fairer course of action.

## MENTAL ANGUISH

▮▮▮▮ Hodges, the third-party claimant, recovered damages in her own right for the mental anguish she suffered as a result of Wheelways' negligence or, alternatively, Wheelways' violations of the DTPA and Insurance Code. The primary judgment is based on a common-law negligence theory. There is no general duty not to negligently

inflict emotional distress, but mental anguish damages, when sought under a negligence theory, are recoverable in connection with the defendant's breach of some other legal duty. *Boyles v. Kerr,* 855 S.W.2d 593, 597 (Tex.1993).

▮▮▮▮ The cause of action for negligent mishandling of an insurance claim belongs solely to the insured. *Whatley v. City of Dallas,* 758 S.W.2d 301, 307 (Tex.App.—Dallas 1988, writ denied); *Becker v. Allstate Ins. Co.,* 678 S.W.2d 561, 561 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). A suit under *Stowers* and *Ranger County* lies to redress the harm suffered by the insured; thus, a third party has no standing to assert such a claim directly against the insurer. *Becker,* 678 S.W.2d at 561. As Harvey's assignee, Hodges could recover for Harvey's mental anguish. However, there is no support in the record justifying a recovery for any mental anguish suffered by Harvey. Hodges, however, cannot recover for her own mental anguish caused by Wheelways' negligence in handling the insurance claim.

The alternate judgment is based on Article 21.21 of the Insurance Code and the DTPA (as incorporated into Article 21.21). Third-party claimants do not have standing to sue to enforce the extracontractual obligations, rights, and remedies imposed by Article 21.21. TEX.INS.CODE ANN. art. 21.21, § 16 (Vernon Supp.1994); *Allstate Ins. Co. v. Watson,* 1994 WL 6788, 37 Tex.Sup.Ct.J. 408, 411 (Jan. 12, 1994). Hodges cannot recover damages under either the Insurance Code or the DTPA for her own mental anguish.

Our decision of the above questions also resolves the primary issues on appeal. However, prudence dictates that we address other issues which might arise in the event of a retrial of this case, as well as issues that may be finalized without harm to any party and are not affected by any error in the trial court.

## EXEMPLARY DAMAGES AND ATTORNEYS' FEES

▮▮▮▮ Wheelways also has complaints regarding the awards of exemplary and additional damages, the jury's finding of gross

negligence, and the award of attorneys' fees for Wheelways' unfair or deceptive acts or practices. Because there is no support for actual damages and Hodges cannot recover damages for her mental anguish, the award of exemplary damages must fall.[8] *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 284 (Tex.1993). Consequently, we do not need to address the sufficiency of the evidence supporting the jury's gross negligence finding. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 41.003(a)(3) (Vernon Supp.1994) (finding of gross negligence is necessary to support the exemplary damages award). Also, without actual damages, there can be no recovery in the alternate judgment for additional damages under the DTPA and Insurance Code because the actual damages form the basis for the recovery of additional damages. *See* TEX.BUS. & COM.CODE ANN. § 17.50(b)(1) (Vernon Supp.1994); TEX.INS. CODE ANN. art. 21.21, § 16(b)(1).

■ Wheelways challenges the alternate judgment, contending that it gives Hodges a duplicate recovery of attorneys' fees. The jury found that forty percent of Hodges' recovery would be a reasonable fee for the necessary services of Hodges' attorneys. Attorneys' fees cannot be recovered in a suit under the DTPA and Insurance Code absent proof that the plaintiff sustained actual damages as a result of the wrongful conduct. *See* TEX.BUS. & COM.CODE ANN. § 17.50(a) (Vernon 1987), (b)(1) (Vernon Supp.1994); TEX.INS.CODE ANN. art. 21.21, § 16(a), (b)(1). Because Hodges cannot recover actual or mental anguish damages, the award of attorneys' fees is erroneous.[9]

## NOTICE OF SUIT

Wheelways complains that the trial court erred in granting a partial summary judgment that precluded it from raising its contractual defenses. The partial summary judgment prevented Wheelways from asserting, as a defense to liability, that Harvey breached his duty to notify Wheelways of the lawsuit Hodges filed against him and to forward to Wheelways any suit papers he received. In a related point of error, Wheelways also complains of the denial of its motion for judgment notwithstanding the verdict based on Harvey's breach.

Summary judgment is proper only when a movant establishes that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law on the issues expressly set out in the motion.

8. Section 41.007 of the Civil Practice and Remedies Code provides that "exemplary damages awarded against a defendant may not exceed four times the amount of actual damages or $200,000, whichever is greater." TEX.CIV.PRAC. & REM.CODE ANN. § 41.007 (Vernon Supp.1994). The trial court included prejudgment interest in the amount of actual damages on which the exemplary damages cap was calculated.

Prejudgment interest may not be assessed or recovered on an award of exemplary damages. TEX CIV.PRAC. & REM.CODE ANN. § 41.006 (Vernon Supp.1994); *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 555 (Tex.1985). Adding prejudgment interest to the amount of the actual damages award and then imposing the statutory cap on this aggregate amount, as the trial court did in this case, yields the same result forbidden by the supreme court when it said prejudgment interest could not be awarded on punitive damages. *Benefit Trust Life Ins. Co. v. Littles*, slip op. at 38, 869 S.W.2d 453, 473, 1993 WL 437192 (Tex.App.—San Antonio, 1993, n.w.h.). Awarding exemplary damages on prejudgment interest circumvents the Civil Practice & Remedies Code and the supreme court's holding in *Cavnar.*

The trial court also included "Attorneys' Fees on the Contract" in the amount of actual damages upon which the exemplary damage award was based. Attorneys' fees are authorized in a successful suit for breach of contract. TEX.CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986). These fees are in the nature of a penalty or punishment for failure to pay a just debt. *Huff v. Fidelity Union Life Ins. Co.*, 158 Tex. 433, 312 S.W.2d 493, 501 (1958); *see also King v. Acker,* 725 S.W.2d 750, 757 (Tex.App.—Houston [1st Dist.] 1987, no writ) (noting that attorneys' fees are not ordinarily an element of actual damages). They are not part of the actual tort damages upon which the statutory exemplary damages cap is to be calculated.

9. In calculating the attorneys' fees awarded by the jury, the trial court added together the amount of the underlying judgment, the additional damages, and the attorneys' fees on the contract claim and then multiplied this total by forty percent. The attorneys' fees on the contract, however, are essentially punitive in nature. *Huff,* 312 S.W.2d at 501. The attorneys' fees on the contract are not part of Hodges' actual damages, are not part of her recovery under Article 21.21, and should not have been included when calculating the reasonable attorneys' fees awarded by the jury.

TEX.R.CIV.P. 166a(c). We view the evidence in the light most favorable to the nonmovant, and all doubts as to the existence of a genuine issue of material fact are resolved in the nonmovant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ The order granting the partial summary judgment does not specify the grounds on which the trial court granted the motion; however, Wheelways' status as an unauthorized insurer is one possible ground that was argued in the motion for partial summary judgment. Any insurance contract effective in this state and entered into by an insurer who is unauthorized to do business in this state is unenforceable *by such insurer.* TEX. INS.CODE ANN. art. 1.14–1, § 8 (Vernon Supp. 1994).[10] Thus, as an unauthorized insurer, Wheelways cannot complain of Harvey's breach of the notice-of-suit clause contained in the contract.

■ Wheelways contends that it is exempt from complying with Texas licensing and form-approval statutes because of the federal Liability Risk Retention Act. In connection with this contention, Wheelways also complains that the trial court erred by entering another partial summary judgment which holds that the Liability Risk Retention Act, 15 U.S.C.A. §§ 3901, et seq., is inapplicable to the present case and does not pre-empt Texas licensing laws.

The Liability Risk Retention Act governs the formation and operation of risk retention groups or purchasing groups. Businesses qualifying as one of these groups are exempt from certain types of state insurance laws. *See* 15 U.S.C.A. §§ 3902(a), 3903(a) (West 1982 & Supp.1993). Neither Wheelways nor its parent company is a risk retention group or a purchasing group. The only purchasing group having any connection with this case is the Lessors and Renters Association through which Capps Rent–A–Car acquired its insurance policy with Wheelways; however, the Association is not a party to the lawsuit. Moreover, federal case law construing the Act holds that the Act does not exempt the insurer of a purchasing group from being licensed or otherwise authorized to do insurance business in the state where a purchasing group member resides. *Florida Dept. of Ins. v. National Amusement Purchasing Group, Inc.*, 905 F.2d 361, 365 (11th Cir. 1990); *Swanco Ins. Co.—Arizona v. Hager*, 879 F.2d 353, 358 (8th Cir.1989), *cert. denied*, 493 U.S. 1057, 110 S.Ct. 866, 107 L.Ed.2d 950 (1990).

■ Wheelways contends that Texas law, even if not pre-empted by federal law, did not require Wheelways to qualify as a Texas insurer to sell insurance to the purchasing group. Wheelways relies on Article 21.54 of the Texas Insurance Code, which implements the provisions of the Liability Risk Retention Act, for support. *See* TEX.INS.CODE ANN. art. 21.54 (Vernon Supp.1994).

Wheelways points out that purchasing groups located in Texas are required to purchase their liability insurance from an insurer who has a certificate of authority to do business in Texas, from an authorized surplus lines insurer, or from a risk retention group chartered in some state. *Id.* § 8(a). The statute does not place similar restrictions on purchasing groups like the Lessors and Renters Association that were located outside the state of Texas at the time the insurance policy was issued.[11] The State

---

10. TEX.INS.CODE ANN. art. 1.14–1, § 8 (Vernon Supp.1994) provides as follows:

Except for insurance procured by a licensed surplus lines agent from an eligible surplus lines insurer as defined in Article 1.14–2 and contracts of insurance independently procured, as defined in Section 2(b)4 of this Article, which are reported and on which premium tax is paid in accordance with this Article or Article 1.14–2, any contract of insurance effective in this state and entered into by an unauthorized insurer is unenforceable by such insurer. In event of failure of any such unauthorized insurer to pay any claim or loss within the provisions of such insurance contract, any person who assisted or in any manner aided directly or indirectly in the procurement of such insurance contract shall be liable to the insured for the full amount thereof pursuant to the provisions of such insurance contract.

11. The statute also requires all purchasing groups to inform its members that its insurer may not be subject to all of this state's insurance laws and regulations. TEX.INS.CODE ANN. art. 21.-54, § 8(b) (Vernon Supp.1994). Wheelways believes this section supports its position. Section

Board of Insurance has recognized that foreign purchasing groups are not under the same purchasing restrictions as those imposed on Texas-based groups and that companies insuring purchasing groups located outside of Texas must be an admitted or surplus lines carrier in the state in which the purchasing group is located. TEXAS STATE BOARD OF INSURANCE, A CONSUMER GUIDE: UNDERSTANDING PURCHASING GROUPS IN TEXAS 6 (1990).

The absence of restrictions on the purchasing group, however, has little impact on an insurer's responsibility to comply with Texas insurance laws. Section 1 of Article 21.54 states that the purpose of the article is to protect the public by regulating the formation and operation of risk retention groups and purchasing groups, not the formation and operation of insurance companies like Wheelways. TEX.INS.CODE ANN. art. 21.54, § 1. Even conceding that a foreign purchasing group can obtain insurance from an insurance company that does not have a certificate of authority to do business in this state, nothing in Article 21.54 of the Insurance Code suggests that the insurance carrier, merely because it is contracting with a foreign purchasing group, is exempt from having to comply with Texas licensing laws if the insurer's contacts with this state would otherwise require the company to obtain a certificate of authority. Wheelway's reliance on Article 21.54 is misplaced.

Unless insurance is procured by a surplus lines agent or independently procured through negotiations occurring entirely outside of Texas, which are reported and on which the appropriate premium tax is paid, any insurance contract effective in this state and entered into by an unauthorized insurer is unenforceable by such insurer. TEX.INS. CODE ANN. art. 1.14–1, §§ 2(b)(4), 8 (Vernon Supp.1994). Wheelways, through the testimony of one of its regional managers, admitted that the insurance contract was negotiated in whole or in part in Texas.

■ The trial court did not err in granting a partial summary judgment holding that the federal Liability Risk Retention Act was inapplicable and did not pre-empt Texas insurance licensing laws, nor did it err in granting a partial summary judgment precluding Wheelways from raising its contractual defenses.[12] Likewise, since Wheelways cannot raise any contractual defenses, the trial court did not err in denying Wheelways' motion for judgment notwithstanding the verdict based on Harvey's breach of his duty to notify Wheelways of the suit filed against him.

## JURY INSTRUCTION

■ Wheelways complains that the trial court erred in instructing the jury that it had a duty to defend Harvey in the underlying suit because Wheelways did not have notice of the suit's existence. Wheelways relies on *Members Ins. Co. v. Branscum,* 803 S.W.2d 462 (Tex.App.—Dallas 1991, no writ). *Branscum* involved the breach of a notice-of-suit clause contained in an insurance contract. The insured had failed to comply with his duties, as set forth in the insurance policy, to notify the insurance company that he was being sued, to forward the suit papers to the company, and to cooperate in the preparations and defense or settlement of his case. *Id.* at 464. A default judgment was entered against the insured, and the third-party claimant then demanded payment from the

8(b), however, simply reflects that certain express provisions in the federal Liability Retention Act may pre-empt state laws; however, case law establishes that state licensing requirements are not among those laws pre-empted. *See* 15 U.S.C.A. §§ 3902(a), 3903(a); *Florida Dept. of Ins. v. National Amusement Purchasing Group, Inc.,* 905 F.2d 361, 365 (11th Cir.1990); *Swanco Ins. Co.—Arizona v. Hager,* 879 F.2d 353, 358 (8th Cir.1989), *cert. denied,* 493 U.S. 1057, 110 S.Ct. 866, 107 L.Ed.2d 950 (1990).

12. There were two possible grounds to support the partial summary judgment. One involved Wheelways' status as an unauthorized insurer, and the second involved Wheelways' denial of coverage prior to the time Hodges filed suit against Harvey. Although we agree with Wheelways that its denial of liability coverage was not established as a matter of law, when a trial court's order granting summary judgment does not specify the grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989).

insurer. *Id.* at 465. The court of appeals held that an insurer's obligation to answer a suit and defend its insured is not triggered until its insured is served and sends the suit papers to the insurer; thus, the insurance company in *Branscum* had no liability under the policy. *Id.* at 467.

■ Wheelways argues that, under *Branscum,* regardless of whether the insurance contract contains an enforceable notice clause, Wheelways had no duty to defend Harvey without first having notice that the suit existed. Wheelways misreads the *Branscum* opinion. In *Branscum,* the court of appeals held that an insurer's contractual duty to defend a lawsuit is not "triggered" until the insurer receives notice of the suit, but the court was not creating a notice requirement that exists independent of the contract as Wheelways contends. Instead, the court's holding reflects the general rule that a notice-of-suit clause is a condition precedent that must be satisfied before other provisions in the policy can be enforced against the insurer. *See Liberty Mut. Ins. Co. v. Cruz,* 1993 WL 502525, 37 Tex.Sup.Ct.J. 276, 277 (Dec. 8, 1993) (rehearing pending); *Dairyland County Mut. Ins. Co. v. Roman,* 498 S.W.2d 154, 157 (Tex.1973). Furthermore, the duty to defend is itself contractual in nature: absent a contract to defend, the insurer has no duty to defend. *Daca, Inc. v. Commonwealth Land Title Ins. Co.,* 822 S.W.2d 360, 364 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *Westchester Fire Ins. Co. v. Rhoades,* 405 S.W.2d 812, 815 (Tex.Civ.App.—Austin 1966, writ ref'd n.r.e.). It would be inequitable to impose a common-law duty (to give notice) upon an insured without imposing a corresponding common-law duty (to defend) upon the insurer.

Because it was an unauthorized insurer, Wheelways cannot complain of its lack of notice of the underlying lawsuit. The trial court did not err in instructing the jury on Wheelways' duty to defend its insured.

We affirm the judgment insofar as it grants a partial summary judgment precluding Wheelways from raising its contractual defenses. This part of the judgment is not affected by any error and is clearly separable from the other parts of the judgment; this part of the judgment need not be reversed. *See* Tex.R.App.P. 81(b)(1).

Otherwise, we reverse the trial court's judgment and remand this cause to that court for a new trial.