

# NUMBER 13-10-00498-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SERVICE CORPORATION INTERNATIONAL AND
SCI TEXAS FUNERAL SERVICES, INC.,                              Appellants,

v.

LETICIA LEAL, ET AL.,                                         Appellees.

## On appeal from the 370th District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Vela, and Perkes**
**Memorandum Opinion by Justice Vela**

This is an appeal from a trial court judgment entered in favor of appellees, Leticia

Leal, Frank Garza, Beatriz Cavazos, Noe Cavazos, and Maria Elena Cisneros ("the

Garzas") Catherine E. Rogers, Evelyn Rogers, and Gerald A. Rogers ("the Rogers")

against appellants, Service Corporation International ("SCI International") and SCI Texas

Funeral Services, Inc. ("SCI Texas") for actual and exemplary damages. The jury determined that appellants committed fraud against appellees and awarded each appellee $10,000 for mental anguish, $10,000 in exemplary damages against SCI International, and $20,000 in exemplary damages against SCI Texas. By five issues, appellants urge that: (1) the trial court erred in disregarding the jury's finding concerning limitations and in entering judgment for the appellees, other than Leticia Leal, despite the limitations bar; (2) there is no evidence that appellees, other than Catherine Rogers, relied on the alleged fraud; (3) there is no evidence to support the jury's damage findings; (4) there is no evidence to support recovery from appellant SCI International; and (5) absent recoverable compensatory damages, punitive damages must also be reversed. We reverse and render judgment in favor of appellants.

## I. BACKGROUND

This suit was brought by the family members of two individuals who were buried at Highland Memorial Park Cemetery, which was owned at the time of trial by SCI Texas. The Garzas asserted claims with respect to the interment of their family member, Rodolfo Garza. Leticia Leal and Frank Garza are the children of Rodolfo Garza. Beatriz Cavazos and Maria Elena Cisneros are the siblings of Rodolfo Garza. Noe Cavazos is Rodolfo Garza's brother-in-law. The other group of appellees, the Rogers, alleged claims with respect to the interment of Charles Rogers. Catherine Rogers is Charles Rogers's widow, and Evelyn and Gerald are his children.

The issues in this case concern spaces 1-8, Lot 143, Section J of Highland cemetery. In 1976, spaces 2-4 were purchased by Petra Lopez, who arbitrated her

2

claims against appellants and is not a party to this appeal. Rodolfo Garza was buried at Highland in 1977. The parties disagreed about where exactly Mr. Garza was initially buried. The disagreement is at the crux of this lawsuit. The Garzas claimed that he was buried in space 4 and alleged that, at some point, he was moved to space 5. Appellants urged that Rodolfo Garza was originally buried in space 5.

In 1982, Charles and Catherine Rogers purchased spaces 5-8 of Lot 143, Section J of Highland cemetery. Thus, the Rogers were either sold a lot that was previously sold and was the burial plot of Rodolfo Garza, or at some point, Rodolfo Garza's remains were moved to space 5.

In 1997, Petra Lopez's mother died, and she requested that her mother be buried in space 4. The evidence about what Lopez was told at this time was conflicting. Ms. Lopez testified that she was told that someone had been buried in space 4 and the body would need to be moved so her mother could be buried there. The witnesses who testified for SCI Texas disagreed that Lopez had been told that. Maria Santillan, an SCI Texas employee, testified that while the cemetery records reflected that someone was buried in space 4, when she went to the gravesite, there was a headstone on space 5 and that the maintenance person used a probe to determine that space 4 was clear.

Charles Rogers died in 2002. He was buried in space 8, which was owned by the Rogers' family. Rodolfo Garza's headstone was removed from space 5 sometime around the time of Charles Rogers' funeral. There was testimony offered by appellees that the headstone was removed to deceive the Rogers family so that they would not learn that Mr. Garza was buried in a space owned by the Rogers family.

3

In 2003, Noe Cavazos, Rodolfo Garza's brother-in-law, went to Rodolfo Garza's gravesite, but he could not locate the headstone. He later located the headstone in a maintenance shed. Cavazos went home and told his wife, Beatriz, and also notified Rodolfo Garza's children. The headstone was later replaced on the grave.

In 2008, the Garza plaintiffs and Petra Lopez opened the graves in spaces 4 and 5. Rodolfo Garza's remains were in space 5 and Ms. Lopez's mother was buried in space 4. The Garzas made the decision to move the remains of Rodolfo Garza to a different cemetery. He was disinterred and moved to a veteran's cemetery.

Leticia Leal had previously filed suit in 2004, alleging that she believed that in 2003 her father's remains had been moved, without her knowledge, from space 4 to space 5. The other appellees did not file suit until 2008.

The jury was asked if the appellants were negligent, intentionally inflicted emotional distress upon the appellees, committed fraud, or trespassed. The jury found that appellants committed fraud against the appellees and determined that SCI Texas was 75% responsible for the injuries caused and SCI International was 25% responsible. The jury also found that the appellees, other than Leticia Leal, failed to file suit within four years of the time that appellees should have discovered their claims. The trial court, however, disregarded the jury's finding with respect to limitations and entered judgment for the appellees.

4

## II. STATUTE OF LIMITATIONS

Appellants argue in their first issue that the trial court erred in disregarding the jury's finding with respect to the statute of limitations. In response to question thirteen, the jury found that appellees, with the exception of Leticia Leal, failed to file suit within four years of the date that they should have discovered the fraud, exercising reasonable diligence.

### A. Applicable Law

A trial court may disregard a finding by the jury only when the answer has no support in the evidence or the question is immaterial. TEX. R. CIV. P. 301; *Spencer v. Eagle Star Inc. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994). This Court must view the evidence in a light that tends to support the jury's finding and disregard all evidence and inferences to the contrary. *Excel Corp. v. McDonald*, 223 S.W.3d 506, 508 (Tex. App.—Amarillo 2006, pet. denied). Where some evidence supports the disregarded finding, the reviewing court must reverse and render a judgment on the verdict. *Star Food Processing, Inc. v. Killian*, 954 S.W.2d 124, 126 (Tex. App.—San Antonio 1997, pet. denied); *Basin Operating Co., Ltd. v. Valley Steel Prods. Co.*, 620 S.W.2d 773, 776 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.).

Appellees secured relief only upon their fraud claims, which are governed by a four year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4) (West 2002); *Exxon Corp. v. Emerald Oil & Gas Co.,* 348 S.W.3d 194, 217 (Tex. 2011); *Williams v. Khalaf*, 802 S.W.2d 651, 654–58 (Tex. 1990). Leticia Leal initially filed her lawsuit in June 2004. The other appellees did not join until May 13, 2008.

5

Appellees argue on appeal that the limitations issue was immaterial because the injury in this case was inherently undiscoverable. They claim that if an injury is inherently undiscoverable, there is no duty upon "the victim to discover the undiscoverable." The appellees' theory of the case seems to have shifted from their trial pleadings and arguments that Rodolfo Garza was initially buried in space 4 and was moved to space 5 in 1997 to their position on appeal, wherein they urge that Rodolfo Garza was buried in space 5 and the plot was sold twice, a second time to the Rogers family in 1982.

Statutes of limitation operate to prevent the litigation of stale claims; they "afford plaintiffs what the legislature deems a reasonable time to present their claims and protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise. The purpose of a statute of limitations is to establish a point of repose. . . ." *S.V. v. R.V.*, 933 S.W.2d 1, 3 (Tex. 1996) (*quoting Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990)).

Appellees pleaded both fraudulent concealment and the discovery rule as affirmative defenses to appellants' limitations claim. The fraudulent concealment doctrine is an affirmative defense to the statute of limitations. *See KPMG Peat Marwick v. Harrison Cty. Housing Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999); *Ponder v. Brice & Mankoff*, 889 S.W.2d 637, 645 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Fraudulent concealment is based upon the principle of estoppel; a defendant should not

6

be permitted to avoid liability for its actions by deceitfully concealing wrongdoing until limitations has run. *Markwardt v. Texas Indus., Inc.,* 325 S.W.3d 876, 894–95 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see S.V.*, 933 S.W.2d at 6; *Vial v. Gas Solutions, Ltd.*, 187 S.W.3d 220, 229 (Tex. App.—Texarkana 2006, no pet.). When the doctrine applies, the statute of limitations is tolled until the injured party, using reasonable diligence, discovered or should have discovered the injury. *KPMG Peat Marwick*, 988 S.W.2d at 750.

The elements of fraudulent concealment are: (1) existence of the underlying tort, (2) the defendant's knowledge of the tort, (3) the defendant's use of deception to conceal the tort, and (4) the plaintiff's reasonable reliance on the deception. *Vial*, 187 S.W.3d at 229; *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 439 (Tex. App.—Fort Worth 1997, writ denied). A defendant's fraudulent concealment of wrongdoing may toll the running of limitations. *Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001). Fraudulent concealment will not, however, bar limitations when the plaintiff discovers the wrong or could have discovered it through the exercise of reasonable diligence. *Id.*; *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 531 (Tex. 1997); *Nichols v. Smith*, 507 S.W.2d 518, 519 (Tex. 1974).

The discovery rule is "a very limited exception to statutes of limitations" and applies "only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). "[W]hen the discovery rule applies, accrual is tolled until a claimant discovers or in the exercise of reasonable diligence should have discovered the injury and that it was

likely caused by the wrongful acts of another." *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998).

**B.   Evidence Before the Jury with Respect to Limitations**

The Rogers' claims were based upon Rodolfo Garza's burial in a space purchased by Charles and Catherine Rogers. They asserted that appellants concealed that Mr. Garza was buried in space 5. Because of the standard of review previously stated with respect to motions to disregard jury findings, we look only to whether there was some evidence to support the jury's finding that the Rogers should have filed suit within four years of the date that they discovered or should have discovered the alleged fraud.

At trial, appellees did not object to the manner the limitations issue was worded. The trial court overruled appellants' objection, in which they urged that appellees should have been asked to identify the date that the plaintiff should have discovered their claims. The evidence is viewed from the charge that was submitted. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001).

None of the appellees proved conclusively that they could not have discovered the alleged fraud less than four years prior to suit. For instance, Leticia Leal, Rodolfo Garza's daughter, testified that she learned that her father's gravestone had been allegedly moved in May 2003. She learned that when Noe Cavazos, another appellee, told her. She did not keep it a secret from Noe Cavazos, Frank Garza, Beatriz Cavazos, or Maria Elena Cisneros that she had filed a lawsuit based upon the facts she knew in May 2003.

8

Frank Garza, Rodolfo Garza's son, testified that his sister told him "something that was mentioned about his being moved or something like that." He agreed that it was about May of 2003. Beatriz Cavazos, Rodolfo Garza's sister, testified at her deposition that she had a thought or a belief in 2003 when her husband first told her about the headstone being moved, that Rodolfo's remains might have been moved. Maria Elena Cisneros testified that Noe Cavazos called her around May 2003 to tell her about the missing headstone.

Noe Cavazos was the individual who discovered the headstone was missing in May 2003. At that time, he notified his wife, the sisters, Leticia, and Frank that his belief was that Rodolfo had been moved.

With respect to the Rogers family, if Mr. Garza was buried in space 5 in 1997, there was evidence from which the jury could have concluded that the presence of Garza's headstone would have provided notice to the Rogers in 1982, when they made their purchase. It was within the province of the jury to have determined that the parties could have discovered their claims at least by May 2003.

The appellees point to contrary evidence that is in the record, including evidence from appellants that the relatives were never told that Rodolfo Garza was buried in a space belonging to another family. It was, however, the appellees' burden to demonstrate that limitations were tolled. The trial court could disregard the jury's finding only if the evidence conclusively established that the jury's finding was wrong. There was evidence before the jury to answer the limitations questions as it did. We sustain issue number one with respect to all appellees, except Leticia Leal.

9

### III. MENTAL ANGUISH DAMAGES

By issue three, appellants urge that there is no evidence to support the jury's award of damages for mental anguish. Mental anguish damages were the only actual damages the jury awarded. Even though we have determined that the statute of limitations barred all claims, except for those of Leticia Leal, we nevertheless address issue three with respect to each appellee in the interest of justice.

### A. Nature of Evidence Required

An award of mental anguish damages must be supported by direct evidence that the nature, duration, and severity of mental anguish was sufficient to cause, and caused, either a substantial disruption in the plaintiff's daily routine or a high degree of mental pain and distress. *Bentley v. Bunton*, 94 S.W.3d 561, 606 (Tex. 2002). Evidence of the nature, duration, and severity of the mental anguish is required, even when an occurrence is of the type for which mental anguish damages are recoverable. *See id.* at 606.

In *Service Corporation International v. Guerra*, the supreme court reviewed the evidence required to recover mental anguish damages in a case very similar to this one. 348 S.W.3d 221 (Tex. 2011). In fact, the appellants in this case were also the defendants in the *Guerra* case. *See id.* In *Guerra*, the testimony regarding mental anguish included a statement by one family member that she had trouble sleeping, the situation they were encountering was very difficult; and she was frustrated and in agony. *Id.* at 232. Another witness testified that she would not accept what had happened and another testified that she was always "wondering." *Id.* Third parties, who testified in

10

*Guerra*, stated that the family had been really hurt by what had happened and there was a level of devastation. *Id.*

The supreme court held that none of the witnesses identified a high degree of mental pain and distress or a substantial disruption of any particular family member's daily routine except for Mrs. Guerra, the decedent's widow. *Id.* The court concluded "the witnesses agreed with the Guerras' attorney that the family generally suffered 'devastation,' but generalized, conclusory descriptions of how an event affected a person are insufficient evidence on which to base mental anguish damages." *Id.* The court opined that the testimony of the daughters, even when combined with testimony of other witnesses, did not support the jury finding that the events caused a disruption of their daily routine or a high degree of mental pain and distress. *Id.*

With respect to the wife of the decedent, in *Guerra*, however, the court concluded there was some evidence to support mental anguish damages. *Id.* at 233. Her testimony was that when she found that her late husband's grave had been disturbed she could not sleep at night, suffered burning in her stomach due to the stress, and sought medical treatment for the symptoms. *Id.* She had headaches and confirmed to take medication. She worried and feared about what might be done to her when she died. *Id.*

Thus, we will use *Guerra* as a road map in determining if the evidence in this case supported the jury's verdict on mental anguish.

11

**B. Standard of Review**

A no-evidence challenge will be sustained when "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Evidence is more than a scintilla if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Mtr. Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex. 2004). If, however, the evidence does no more than create a mere surmise or suspicion and is so slight as to necessarily make any inference a guess, then it is no evidence. *Id.* We presume that jurors made all inferences in favor of the verdict, but only if reasonable minds could do so. Jurors may not simply speculate that a particular inference arises from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 821 (Tex. 2005).

**C. The Testimony**

Because the jury awarded damages for mental anguish for each appellee, individually, we will review the testimony of all of the appellees as it pertains to mental anguish.

**1. Leticia Leal**

Leticia Leal, Rodolfo Garza's daughter, testified that she still goes back to 1977 when her father died because of what has happened. She works for a church and attends many funerals. She thinks about her father because he was not resting in

peace.   She indicated that she began seeing a psychologist recently, but that from 2003, until recently, she had not seen any doctor or healthcare provider for anything concerning the lawsuit.   Leal did not state that she was seeing a psychologist because of the events made the basis of this lawsuit.   She continues to perform her work duties and takes care for her family.   Leal also testified that going through a second burial did some damage to her, but did not elaborate on what that damage involved.   She said she is in good health. She described her family as "normal."

The testimony that Leal is seeing a psychologist, by itself, is not enough.   First, she does not relate it to any act by appellants.   Second, while Leal stated that attending the disinterment of her father did "some damage," there is no direct evidence of the nature, duration, or severity of her mental distress as required by *Guerra* to obtain damages for mental anguish.   Under the analysis reiterated recently by the supreme court, in *Guerra*, there was legally insufficient evidence to support the jury's award of mental anguish with respect to Leticia Leal's claim.

### 2.  Frank Garza

Frank Garza, Rodolfo's son, described the disinterment process as something that is not supposed to happen.   He hoped that no one would disturb his father's body again. There was no evidence offered of the nature, duration, and severity of the mental anguish suffered by Frank Garza as set forth in *Guerra*.  Thus, there was legally insufficient evidence to support the jury's award of mental anguish with respect to the claim of Frank Garza.

13

### 3. Beatriz Cavazos

Beatriz Cavazos, Rodolfo's sister, testified that it was heartbreaking and caused her family much grief, sleepless nights, and crying spells. She testified: "sometimes I just sit down and just daze, look down at the floor for minutes, you know, then I just come back and try to snap out of it." This is similar to the daughter's testimony in *Guerra* in which she testified that she had lots of nights that she didn't sleep because she was thinking and it had been very difficult. *Guerra*, 348 S.W.3d at 232. The supreme court decided that none of the witnesses in *Guerra* identified a specific high degree of mental pain and distress or a substantial disruption of any particular family member's daily routine to warrant mental anguish damages. Likewise, the evidence with respect to Beatriz Cavazos is legally insufficient to support the finding that she suffered compensable mental anguish damages.

### 4. Noe Cavazos

Noe Cavazos, Rodolfo's brother-in-law, testified that the two were very close. According to Cavazos, the events that occurred left scars that you cannot get over. He could not describe his feelings. He does not take medication for depression, anxiety, or sleep problems and has not seen a physician for such things. He described himself as a happy person. We hold that the evidence with respect to Noe Cavazos is legally insufficient to support the finding that he suffered compensable mental anguish damages.

### 5. Maria Elena Cisneros

Maria Elena Cisneros, Rodolfo's sister, testified that she and her brother were very close. She was devastated to learn that her brother might have to be moved because it

was a sacred place. She cannot sleep, thinking about the injustice that has been done. On cross-examination she testified that she has had sleep issues for many years and takes no medication for sleeplessness. Cisneros described her family as a happy one. Her testimony is similar to that found legally insufficient in *Guerra*. Thus, we hold it legally insufficient to support the mental anguish damage award here.

### 6. Evelyn Rogers

Evelyn, Catherine Roger's daughter, testified that she found it hard to watch others at the disinterment. She is taking Wellbutrin because of "everything that had gone on with the disinterment," as well as the situation with her mother and the deposition. Her testimony, similar to the widow in *Guerra*, is sufficient under the supreme court's holding in *Guerra* to support an award of mental anguish.

### 7. Gerald A. Rogers

Gerald Rogers, Catherine Roger's son, testified that he has trouble sleeping. He worries about what his mother is doing. He has to stay up with her at night. Gerald is feeling stress but is not seeing a psychologist, psychiatrist, mental health professional, nor is he taking any medication for stress. His testimony is legally insufficient to support the award of mental anguish.

### 8. Catherine E. Rogers

Catherine Rogers was the widow of Charles Rogers. She did not testify at trial. However, her son, Gerald Rogers, testified that she became worried after finding out about the burial plots. She would be up all night. She began having an irregular heart beat and had trouble walking. She had a pacemaker put in prior to Mr. Rogers' death.

Her daughter, Evelyn, testified that Catherine was devastated because she felt she had failed her husband. Right after they told her of the problems at the cemetery, Catherine started having more heart problems.

The testimony of Rogers's children with respect to Catherine Rogers's condition is similar to testimony that the supreme court found to be some evidence of mental anguish in *Guerra* with respect to the testimony of Mrs. Guerra. In *Guerra*, Mrs. Guerra sought medical treatment for the problems that she traced to the tampering with her husband's grave. She took medication for anxiety and depression relating to the situation involving her husband's burial. Here, the Rogers children testified that their mother became worried after she learned about the burial plots. She began having additional heart problems after they told her about the situation at the cemetery. The testimony with respect to Catherine Rogers is legally and factually sufficient to support the award of mental anguish damages in her favor.

We sustain issue three with respect to all appellees except for Catherine and Evelyn Rogers.

## IV. PUNITIVE DAMAGES

In appellants' fifth issue, they argue that the exemplary damages awarded must be reversed in the absence of compensatory damages. Section 41.004 of the Texas Civil Practice and Remedies Code allows exemplary damages to be awarded only if damages, other than nominal damages, are awarded. TEX. CIV. PRAC. & REM. CODE ANN. § 41.004(a) (West 2008). The only damages awarded here were for mental anguish, which we have found to be supported by legally insufficient evidence, except for

16

Catherine and Evelyn Rogers. However, we have also determined that the case is barred by limitations except for the claims of Leticia Leal. Therefore, there is no basis for an award of compensatory damages in this case. Where there is no support for actual damages, exemplary damages also fail. *Wheelways Ins. Co. v. Hodges*, 872 S.W.2d 776, 783 (Tex. App.—Texarkana 1994, no writ). Appellants' fifth issue is sustained.

### V. FRAUD CLAIMS AGAINST SERVICE CORPORATION INTERNATIONAL

By appellants' fourth issue, they claim that there is no legal or evidentiary basis for recovery against appellant SCI International. The jury found that SCI International committed fraud against the appellees, determining that the percentage of responsibility of SCI International was 25% and assessing punitive damages against SCI International of $10,000 for each appellee.

### A. Standard of Review

We follow the same evidentiary standard of review iterated previously under the mental anguish section of this opinion.

### B. The Evidence

William O'Brien, president of SCI Texas, testified that it acquired Highland cemetery in 1995. According to O'Brien, the employees at Highland are employed by SCI Texas. He testified that SCI International is the parent company. It has no employees. According to O'Brien, all of the people in the Rio Grande Valley who worked for any cemeteries that are associated with any type of SCI entity all work for SCI Texas.

There was contrary testimony offered by Susano Garza who served as a family service counselor for Highland, who testified as follows:

17

Q.  You said you worked for Service Corporation International. Actually, did you work for SCI Funeral Services, Inc., which is a Texas corporation?

A.  No, no.  The cemetery portion only.

Q.  You made, as close as you can come to, the exact name or your employer?

A.  Service Corporation International, SCI.

Thus, whether he was correct or not, Susano Garza testified that SCI International was his employer.  But, the question remains whether, even assuming Susano Garza was an employee of SCI International, his employment status was sufficient to sustain exemplary damages against SCI International.  We hold that it is not.

The liability of SCI International was also addressed to a certain extent in *Guerra*. *Id.* at 230–31.  The Guerras introduced the same testimony of Susano Garza that we just iterated.  The supreme court did not, however, address the propriety of this testimony except to say that it did not affect the employment status of the individuals at Mont Meta cemetery, the cemetery at issue in *Guerra*.  *Id.*  The court ultimately concluded that the evidence was legally insufficient to support the liability findings against SCI International, primarily based upon the testimony of William O'Brien that the Mont Meta workers were employees of SCI Texas, not SCI International.  *Id.* at 230.  Similarly, in this case, O'Brien testified that the Highland workers, who included Susano Garza, were SCI Texas' employees.

Assuming Susano Garza was an employee of SCI International, however, there is no evidence to show that he was acting in a managerial capacity to subject SCI International to exemplary damages.  *See Fisher v. Carrousel Motor Hotel, Inc.,* 424

18

S.W.2d 627, 630 (Tex. 1967). Further, the charge limits malice to the specific intent of Ray McManness, John Hudson, Rey Rosas, or Minerva Hernandez. Thus, whether or not Susano Garza is an employee of SCI International is of no import. The only direct evidence offered at trial was that the other workers at Highland, including those specifically named in the court's charge, were employees of SCI Texas. We sustain issue four.

## VI. CONCLUSION

With respect to all appellees, except Leticia Leal, we have determined that the trial court erred in disregarding the jury's answer with respect to limitations as there was some evidence before the jury to support its answer to the limitations question. Thus, as to all appellees, other than Leticia Leal, we conclude that their causes of action were barred by limitations. There was also legally insufficient evidence of mental anguish to support the jury's award of mental anguish to all appellees, except Catherine and Evelyn Rogers. Because there was legally insufficient evidence to support an award of actual damages, the jury's award of exemplary damages must also be reversed and rendered. For the foregoing reasons the judgment of the trial court is reversed and rendered as to all appellees.


ROSE VELA
Justice

Dissenting Memorandum Opinion
By Justice Benavides

Delivered and filed the
11th day of October, 2012.

19